05-15-00088-CV

ACCEPTED
05-15-00088-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
1/22/2015 12:29:22 PM
LISA MATZ
CLERK

NO. _____

In the Court of Appeals for the Fifth District of Texas at Dallas

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
1/22/2015 12:29:22 PM
LISA MATZ
Clerk

**IN RE MICHAEL GIBB,**

**Relator.**

_____

Original Proceeding for Writ of Mandamus to the
366th Judicial District Court of Collin County, Texas
Cause No. 366-55837-2009

**PETITION FOR WRIT OF MANDAMUS**

Charles "Chad" Baruch
THE LAW OFFICE OF CHAD BARUCH
Texas Bar No. 01864300
3201 Main Street
Rowlett, Texas 75088
Telephone: (972) 412-7192
Facsimile:  (972) 412-4028
Email: baruchesq@aol.com

Counsel for Relator

## Identity of Parties and Counsel

**Relator Michael Gibb**

Appellate Counsel
Charles "Chad" Baruch
Texas Bar No. 01864300
THE LAW OFFICE OF CHAD BARUCH
3201 Main Street
Rowlett, Texas 75088

Trial Counsel
Howard Shapiro
Texas Bar No. 18110800
THE SHAPIRO LAW FIRM
P.O. Box 861720
Plano, Texas 75086

**Real Party in Interest Emily Stephens**

Charles C. Philips
Texas Bar No. 00784760
PHILIPS & EPPERSON, LP
2301 Virginia Parkway
McKinney, Texas 75071

**Respondent The Honorable Raymond G. Wheless**
Judge, 366th Judicial District Court (Collin County)
2100 Bloomdale Road, Suite 30146
McKinney, Texas 75071

# Table of Contents

Identity of Parties and Counsel..................................................................................i

Table of Contents....................................................................................................ii

Index of Authorities...............................................................................................iv

Statement of the Case..............................................................................................1

Statement of Jurisdiction........................................................................................1

Issues Presented.....................................................................................................1

    1. Is mandamus relief warranted by the trial court's abuse of discretion in signing temporary orders—
- without any pleading requesting them,
- without any notice they were being considered,
- without any supporting evidence,
- under a habeas corpus provision inapplicable to this SAPCR enforcement proceeding, and
- where they impermissibly modify a final judgment?

Statement of Facts...................................................................................................2

Argument ...............................................................................................................8

    1. The trial court abused its discretion in entering temporary orders without any supporting pleading, notice, or opportunity for an adversary hearing. ..................................................................................8

    2. The trial court abused its discretion in entering the Order under a provision limited to habeas corpus proceedings. ...................................10

    3. The trial court abused its discretion in signing the order without any supporting evidence...................................................................... 11

    4. The trial court abused its discretion in modifying the Judgment.............14

Prayer ...................................................................................................................15

Certificate of Compliance.............................................................................16

Certificate of Service ..................................................................................16

Rule 52.3(j) Certification ............................................................................17

Appendix:

Tab 1:  Order Concerning Visitation
Tab 2:  Order in Suit to Modify Parent-Child Relationship
Tab 3:  Texas Family Code § 157.374
Tab 4:  Texas Family Code § 105.001

# Index of Authorities

**Cases:**

*Dancy v. Daggett*,
   815 S.W.2d 548 (Tex. 1991) (per curiam) ................................................................. 8

*In re A.B.P.*,
   291 S.W.3d 91 (Tex. App.—Dallas 2009, no pet.) ............................................... 11

*In re Bustos*,
   No. 04-14-00755-CV, 2014 WL 7339259 (Tex. App.—San Antonio, Dec. 23,
   2014, no pet. h.) (mem. op.) ............................................................................. 9-10

*In re Herring*,
   221 S.W.3d 729 (Tex. App.—San Antonio 2007, orig. proceeding) ..................... 8

*In re Lee*,
   411 S.W.3d 445 (Tex. 2013) ....................................................................... 10, 15

*McElreath v. Stewart*,
   545 S.W.2d 955 (Tex. 1977) ....................................................................... 12, 13

*Moroch v. Collins*,
   174 S.W.3d 849 (Tex. App.—Dallas 2005, pet. denied) ................................ 11-12

*Walker v. Packer*,
   827 S.W.2d 833 (Tex. 1992) .............................................................................. 8

*Whatley v. Bacon*,
   649 S.W.2d 297 (Tex. 1983) ........................................................................ 9, 10

**Statutes, Rules, and Regulations:**

TEX. FAM. CODE ANN. §105.001 (West 2014)................................................. 8, 9, 11

TEX. FAM. CODE ANN. §157.374 (West 2014) ................................................... 10, 12

TEX. GOV'T CODE ANN. §22.221 (West 2004) .........................................................1

TEX. R. CIV. P. 329b...........................................................................................14

**Statement of the Case**

| | |
|---|---|
| *Underlying Proceeding:* | Enforcement motion in SAPCR. |
| *Respondent:* | Hon. Raymond G. Wheless, 366th Judicial District Court, Collin County, Texas. |
| *Respondent's Action:* | Granted temporary orders under habeas corpus provision of Texas Family Code § 157.374 (App. 1). |
| *Date of Order:* | December 22, 2014. |

**Statement of Jurisdiction**

This Court has jurisdiction to issue a writ of mandamus to a district court judge under Section 22.221(b)(1) of the Texas Government Code. TEX. GOV'T CODE ANN. § 22.221(b)(1) (West 2004).

**Issue Presented**

Is mandamus relief warranted by the trial court's abuse of discretion in signing temporary orders—

- without any pleading requesting them,

- without any notice they were being considered,

- without any supporting evidence,

- under a habeas corpus provision inapplicable to this SAPCR enforcement proceeding, and

- where they impermissibly modify a final judgment?

## Statement of Facts

Mother and Father are the parents of a six-year-old child.[1] This mandamus proceedings arises from temporary orders for visitation signed by the trial court on December 19, 2014.[2] The trial court signed the temporary orders nearly two months after signing a final judgment in the case.[3]

*Entry of Final Judgment and Subsequent Temporary Orders*

On October 28, 2014, the trial court signed a final order (referred to in this petition as the Judgment) in a suit between Mother and Father to modify the parent-child relationship.[4] The Judgment incorporated a mediated settlement agreement.[5]

The Judgment required that Mother undergo random drug testing for two years, setting forth a four-stage process (Steps 1, 2, 3, and 4) by which Mother could—through compliance with these testing requirements—gain increased possession and access rights.[6] Possession rights for all 4 steps were "subject to the drug testing requirements" of the MSA and Judgment.[7] Step 4 was the first stage in which Mother could have unsupervised overnight

---

[1] App. 2 at 3; R.036.
[2] App. 1; R.121.
[3] App. 2; R.034-100.
[4] App. 2; R.034-100.
[5] R.022-032.
[6] App. 2 at 12-31; R.045-064.
[7] App. 2 at 15, 19, 21, 23; R.048, 052, 054, 056.

possession of the child. But under the Judgment, Mother could not possibly reach Step 4 in less than eight months.

The Judgment designated SurScan as the testing facility, required Mother to submit to monthly random tests as noticed by SurScan, and mandated that the first test occur by February 5, 2014. Father was to receive all test results. A positive finding on any test (including a "no show") would "return [Mother] to the beginning of Step 1 possession rights . . . ."[8]

The Judgment required that all Step 1 visitation was to be supervised.[9] It further required that Mother "be present with the child during the entire visit during" for all weekend visits during both Step 1 and Step 2.[10]

The Judgment became final on November 28, 2014. Thereafter, Mother filed a motion for enforcement claiming that she was in Step 2 under the Judgment, but that Father "refused to allow Step 2 possession." Mother asked that Father be held in contempt as a result.[11] Mother did not request temporary orders in the motion,[12] and the hearing notice made no mention of temporary orders.[13]

---

[8] App. 2 at 13-15; R.046-048.
[9] App. 2 at 15; R.048.
[10] App. 2 at 16, 19; R.049, 052.
[11] R.102-113.
[12] R.102-113.
[13] R.119.

The trial court conducted an evidentiary hearing (discussed in the following section) on Mother's contempt motion. Midway through the hearing, the trial court told the parties that the MSA (which formed the basis for the Judgment) was "a terrible agreement" and "not in the best interest of the child."[14]

At the conclusion of the hearing, the trial court announced that it was denying the contempt action but was, *sua sponte*, entering temporary orders "declaring" Mother to be in Step 4 (thus permitting her unsupervised overnight possession)—even though Mother had not claimed to be in Step 4.[15]

The trial court stated it was acting under authority of Section 157.374 of the Texas Family Code, authorizing temporary orders in habeas corpus proceedings where there exists a "serious immediate question concerning the welfare of the child." The trial court stated that a serious immediate question existed under the MSA upon which it had entered the Judgment two months earlier:

> The Court denies the Motion for Contempt. However, the Court finds that the present arrangement under this Order agreed to by the parties is—the MSA—raises a

---

[14] R.273.
[15] R.300.

serious immediate question concerning the welfare of the child.

Whatever harm might befall this child because of the mother not showing up for a drug test or not—or being 15 minutes late or not sending 24 hours' notice is far offset by the damage caused to the emotional and mental stability of this child because of the ongoing continuous serious conflict between the mother and the father.

Therefore, under section 157.374 of the Family Code, the Court is authorized to enter a Temporary Order, and the Court is going to enter a Temporary Order, to the effect that we are now in Step 4 of the Order that was entered on October 28th.

That means that [Mother] now has unsupervised possession pursuant to the standard possession order.[16]

The trial court signed an order (referred to in this petition as the Order) stating that Mother's visitation with the child "shall be in accordance with Step 4 visitation" under the Judgment.[17] Mother now has unsupervised overnight possession without having completed the conditions precedent set by the MSA and Judgment.

*Evidence at the Hearing*

*Evidence of Step 2.* Mother testified that she was in Step 2 under the Order[18] and that she had advised Father of that fact.[19] She testified that

---

[16] R.300
[17] App.1; R.121.
[18] R.139.

5

Father refused to permit her possession rights under Step 2.[20] No one testified that Mother was in Step 4.

*Evidence of Child Welfare.* No one testified that there existed any "serious immediate concern" about with the child's welfare. Indeed, no one testified to **any** real concern with the child's welfare. A visitation supervisor testified that the child was "torn" between the parents—but said nothing linking this to the Judgment or mentioning any serious immediate concern about it.[21]

*Evidence of Testing Compliance.* Mother initially testified that she had taken and passed "many" random drug tests, both at SurScan and other places,[22] and that she had complied with the testing requirements.[23] But on cross-examination, Mother could not say when she first took any drug test or confirm that it was by the deadline set in the Judgment.[24] Indeed, Mother could not say when she **ever** had taken **any** drug test.[25]

Despite her original testimony about passing unspecified drug tests at unspecified times, Mother admitted to using drugs until entering rehab in

---

[19] R.132-34.
[20] *See, e.g.*, 134-35, 143-44.
[21] R.221.
[22] R.141.
[23] R.142, 177.
[24] R.177-78.
[25] R.178.

June 2014—nearly six months after she was to start mandatory testing under the Judgment.[26] Mother admitted to using drugs "in January, February, March" of 2014.[27] In an earlier hearing, Mother's own lawyer confirmed that Mother did not take her first drug test under the Judgment until June 2014.[28]

Ultimately, when asked directly, Mother confirmed that she had not taken the random drug tests required by the Judgment:

Q: No. Did you do random monthly tests at SurScan?

A: No.[29]

This confirmed an earlier statement by Mother's lawyer that Mother had not taken the required random drug tests.[30]

Finally, Father testified to never having seen the results of any test at SurScan, or any evidence of Mother's compliance with the testing provisions.[31]

---

[26] R.181-83, 187.
[27] R.183.
[28] R.314.
[29] R.189.
[30] R.316.
[31] R.293.

**Argument**

Mandamus issues to correct a clear abuse of discretion for which the relator lacks an adequate remedy by appeal. *See Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992). "A trial court has no 'discretion' in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ." *Id*. at 840 (citations omitted).

Because temporary orders in a suit affecting a parent child relationship are not appealable, mandamus is an appropriate remedy when a trial court abuses its discretion. *See Dancy v. Daggett*, 815 S.W.2d 548, 549 (Tex. 1991) (per curiam) (citation omitted); *In re Herring*, 221 S.W.3d 729, 730 (Tex. App.—San Antonio 2007, orig. proceeding) (citation omitted).

1.  **The trial court abused its discretion in entering temporary orders without any supporting pleading, notice, or opportunity for a hearing.**

In a suit affecting the parent-child relationship, the trial court is authorized to make temporary orders for the safety and welfare of the children. TEX. FAM. CODE ANN. §105.001(a) (West 2014). But except in specified situations not present here, such orders may not be rendered

"except after notice and a hearing." *Id*. § 105.001(b). A trial judge may not issue temporary orders without the required notice. *See, e.g., Whatley v. Bacon*, 649 S.W.2d 297, 299 (Tex. 1983) (discussing predecessor statute).

Here, Father lacked any notice concerning entry of temporary orders. Mother's pleading did not request temporary orders and the notice of hearing made no reference to temporary orders. Even during the hearing, neither Mother nor the trial court made any mention of the possibility of temporary orders until the conclusion of the evidence. Under these circumstances, Father simply had no idea that he needed to present evidence weighing against temporary orders. To the contrary, Father was on notice only of the need to disprove the enforcement allegations.

The San Antonio Court of Appeals considered a similar situation recently in *In re Bustos*, No. 04-14-00755-CV, 2014 WL 7339259, at *1 (Tex. App.—San Antonio, Dec. 23, 2014, no pet. h.) (mem. op.) (citation omitted). There, the trial court, *sua sponte*, entered temporary orders without any pleadings requesting or supporting such relief, and without any advance notice. The court of appeals conditionally granted mandamus relief, concluding that the trial court abused its discretion in entering the temporary

9

orders "without proper notice to [Father] and an opportunity for a full adversary hearing." *Id.* at *3 (citation omitted).

This case is similar. Neither Mother's pleadings nor the notice of hearing informed Father of the need to put on evidence in opposition to temporary orders. So far as Father knew, the only thing he needed to rebut was a contempt finding. The trial court abused its discretion by signing the Order without any pleadings to support it, without any notice to Father that it was contemplated, and without Father being afforded the opportunity for an adversary hearing on it.

## 2. The trial court abused its discretion in entering the Order under a provision limited to habeas corpus proceedings.

The trial court signed the Order under Section 157.374 of the Family Code, authorizing a court to "render an appropriate temporary order if there is a serious immediate question concerning the welfare of the child." TEX. FAM. CODE ANN. §157.374 (West 2014). But Section 157.374 is part of Chapter 157, Subchapter H of the Family Code, concerning habeas corpus proceedings. It authorizes a trial judge to issue a temporary order "in a habeas corpus proceeding . . . ." *Whatley*, 649 S.W.3d at 299; *see generally In re Lee*, 411 S.W.3d 445, 457-57 (Tex. 2013) (referencing a trial court's ability

to protect the safety and welfare of a child "through habeas corpus proceedings").

Nothing in Section 157.374 suggests that it applies to non-habeas proceedings. Instead, Section 105.001 of the Family Code governs temporary orders in a SAPCR proceeding. TEX. FAM. CODE ANN. §105.001 (West 2014). The trial court abused its discretion by granting temporary orders under the habeas corpus provisions of the Family Code in a SAPCR.

**3. The trial court abused its discretion in signing the order without any supporting evidence.**

To determine whether the trial court abused its discretion in a family law case, this court considers whether the trial court (1) had sufficient evidence upon which to exercise its discretion and (2) erred in its exercise of that discretion. *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.) (citations omitted). Traditional sufficiency standards of review are part of this assessment, coming into play with regard to the first question. *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied) (citations omitted). This court then determines whether, based on the elicited evidence, the trial court made a reasonable decision. *Id.*

In examining legal sufficiency, this court reviews the evidence in the light most favorable to the judgment to determine whether the trier of fact

11

could reasonably have formed a firm belief or conviction that its finding was true. *Id.* at 858 (citation omitted). In examining factual sufficiency, this court determines "whether, based on the entire record, a fact finder could reasonably form a firm conviction or belief that the allegations in the petition were proven." *Id.* (citations omitted).

Even if the trial court had the power to enter the temporary order, it abused its discretion by doing so in the absence of any supporting evidence. The provision relied upon by the trial court, Section 157.374, requires a finding of "a serious immediate question concerning the welfare of the child." TEX. FAM. CODE ANN. §157.374 (West 2014). The Supreme Court of Texas has held that application of this provision contemplates a situation "where the child was in imminent danger of physical or emotional harm and immediate action was necessary to protect the child." *McElreath v. Stewart*, 545 S.W.2d 955, 958 (Tex. 1977) (citations omitted).

The trial court simply heard no evidence raising any immediate question concerning the child's welfare. Indeed, very little was said about the child during the hearing. At best, the trial court heard a visitation supervisor say the child was torn between his parents. No evidence suggested that this resulted in "a serious immediate question concerning the welfare of the

12

child." This evidence "falls far short of the necessary statutory requisites of immediacy and seriousness." *Id.* at 958.

Independently, the trial court also lacked any evidence by which it could have concluded that Mother's possession rights were in Step 4 under the Judgment. The evidence conclusively established that Mother was ***not*** in Step 4. Mother admitted to using drugs until June 2014. Her lawyer also admitted, on the record, that Mother did not take her first drug test until June 2014 (and, even then, it was not the required random test). By the terms of the Judgment, even if Mother's non-compliant June test started the provisions of Step 1, she could not possibly enter Step 4 until at least March 2015.[32]

Of course, the trial court's order also lacked sufficient supporting evidence because there is no evidence—literally none—that Mother ever exited Step 1. The order establishes SurScan as the exclusive testing provider. Mother admitted under cross-examination that she has not undergone the required random drug testing at SurScan. This testimony conclusively establishes Mother's failure to comply with the Judgment in a matter sufficient to permit her to exit Step 1. The trial court abused its

---

[32] The Judgment requires Mother to remain in Step 1 for ten weeks, in Step 2 for three months, and in Step 3 for three months. Assuming a start date of July 1, 2014, this would mean Mother could not enter Step 4 until March 2015 at the earliest.

discretion by declaring Mother to be in Step 4 when the evidence established that she is not.

**4.      The trial court abused its discretion in modifying the Judgment.**

The real truth, as the record makes fairly clear, is that the trial court just changed its mind about the MSA and Judgment, concluding they were not in the best interest of the child. The trial court stated on the record its belief that the Judgment's requirements were too difficult and Mother never would be able to comply with them.[33] Casting aside the parties' mediated settlement agreement and the Judgment, the trial court simply "declared" Mother's way to full standard visitation.

Once the Judgment became final, the trial court lost plenary power to modify it by any means. TEX. R. CIV. P. 329b(d). The Judgment became final well in advance of the enforcement hearing. For better or worse, the Judgment required Mother to fulfill certain conditions to obtain standard visitation with the child. As the evidence at the hearing established, Mother failed to comply with those conditions. By simply "declaring" Mother to be in step four, the trial court impermissibly modified the Judgment.

---

[33] R.273.

14

Even had the Judgment not been final the trial court could not have modified the provision concerning the various steps. The Judgment was based on an MSA. Even before the Judgment became final, the trial court would have lacked the authority to reject the MSA based on a best interest analysis. *In re Lee*, 411 S.W.3d at 470-71, 477-78.

**Prayer**

The trial court abused its discretion in entering the Order. As a result, Relators ask that this Court grant a writ of mandamus and direct the trial court to dissolve the Order.

Respectfully submitted,

/s/Charles "Chad" Baruch
Texas Bar Number 01864300
THE LAW OFFICE OF CHAD BARUCH
3201 Main Street
Rowlett, Texas 75088
Telephone: (972) 412-7192
Facsimile: (972) 412-4028
Email: baruchesq@aol.com

*Counsel for Relator*

**Certificate of Compliance**

This brief was prepared using Microsoft Word for Mac. Relying on the word count function in that software, I certify that this brief contains 2,822 words (exclusive of the caption, identify of parties and counsel, table of contents, index of authorities, statement of the case, statement of issues, signature, proof of service, certificate of compliance, and certificate of service).

/s/Charles "Chad" Baruch
Attorney for Relators

**Certificate of Service**

The undersigned counsel of record certifies that a true copy of this instrument was served in accordance with Rule 9.5 of the Texas Rules of Appellate Procedure on each party or that party's lead counsel on January 22, 2015, as follows:

Charles C. Phillips
Philips & Epperson, LP
2301 Virginia Parkway
McKinney, Texas 75071
By email to:
rcollins@philipsandepperson.com

The Honorable Raymond Wheless
Judge, 366th Judicial District Court
2100 Bloomdale Road, Suite 30146
McKinney, Texas 75071
By regular mail

/s/Charles "Chad" Baruch
Attorney for Relator

## Rule 52.3(j) Certification

The undersigned counsel of record certifies that he has reviewed this petition, as well as the record, and concluded that every factual statement in this petition is true, correct, and based on competent evidence included in the appendix or record. The undersigned counsel of record further certifies that the pleadings, orders, and judgment contained in the appendix are true and correct copies of the originals.

/s/Charles "Chad" Baruch
Attorney for Relator

1

Filed: 12/19/2014 2:44:40 PM
Andrea S. Thompson
District Clerk
Collin County, Texas
By Tina Chandler Deputy
Envelope ID: 3551192

## CAUSE NO. 366-55837-2009

| | | |
|---|---|---|
| IN THE INTEREST OF | § | IN THE DISTRICT COURT |
| | § | |
| H.W.G. | § | 366TH JUDICIAL DISTRICT |
| | § | |
| A CHILD | § | COLLIN COUNTY, TEXAS |

## ORDER CONCERNING VISITATION

On December 19, 2014, the Court heard this case. After hearing evidence and argument of counsel, the Court finds that EMILY C. STEPHENS has satisfied all prerequisites to advance to Step 4 visitation as outlined in the parties' prior order.

IT IS THEREFORE ORDERED that effective December 19, 2014, the visitation of EMILY C. STEPHENS with the child the subject of this suit shall be in accordance with Step 4 visitation as outlined in the *Order in Suit to Modify Parent-Child Relationship* entered on or about October 28, 2014.

IT IS FURTHER ORDERED that all terms of the prior order not modified herein shall remain in full force and effect.

SIGNED on __12/19/2014__, 2014.

_____
JUDGE PRESIDING

---

ORDER CONCERNING VISITATION                                    SOLO PAGE

**2**

| IN THE INTEREST OF | § | IN THE DISTRICT COURT |
| --- | --- | --- |
| | § | |
| ▮▮▮▮▮▮▮▮▮▮▮▮▮ | § | 366TH JUDICIAL DISTRICT |
| | § | |
| A CHILD | § | COLLIN COUNTY, TEXAS |

## ORDER IN SUIT TO MODIFY PARENT-CHILD RELATIONSHIP

On this day the Court heard this case.

*Appearances*

Petitioner, MICHAEL GIBB, did not appear in person but has agreed to the terms of this order as evidenced by Petitioner's signature and that of his attorney, Howard Shapiro, below.

Respondent, EMILY STEPHENS, has made a general appearance and has agreed to the terms of this order, to the extent permitted by law, as evidenced by Respondent's signature, and that of her attorney of record, Kristy Blanchard, below.

Also appearing was Charity Borserine, appointed by the Court as amicus attorney to assist the Court in protecting the best interests of the child the subject of this suit. The amicus attorney has agreed to the terms of this order, as evidenced by the signature of the amicus attorney below.

*Consent by Person with Right to Designate Primary Residence*

EMILY STEPHENS, who has the exclusive right to designate the residence of the child under the most recent final order, has consented to the terms of this order as evidenced by EMILY STEPHENS's signature below.

*Jurisdiction*

The Court, after examining the record and the evidence and argument of counsel, finds that it has jurisdiction of this case and of all the parties and that no other court has continuing, exclusive jurisdiction of this case. All persons entitled to citation were properly cited.

*Jury*

A jury was waived, and all questions of fact and of law were submitted to the Court.

*Record*

The making of a record of testimony was made by Nicki Garcia, the Court Reporter for the 366th Judicial District Court.

*Child*

The Court finds that the following child is the subject of this suit:

Name: ███████████████

Sex: Male

Birth date: ████████

Home state: Texas

Social Security number: ████████

*Findings*

The Court finds that the material allegations in the petition to modify are true and that the requested modification is in the best interest of the child. IT IS ORDERED that the requested modification is GRANTED.

*Parenting Plan*

The Court finds that the provisions in these orders relating to the rights and duties of the parties with relation to the child, possession of and access to the child, child support, and optimizing the development of a close and continuing relationship between each party and the child constitute the parties' agreed parenting plan.

*Conservatorship*

The Court finds that the following orders are in the best interest of the child.

IT IS ORDERED that MICHAEL GIBB and EMILY STEPHENS are appointed Joint Managing Conservators of the following child: █████████ ████████

IT IS ORDERED that, at all times, MICHAEL GIBB, as a parent joint managing conservator, shall have the following rights:

ORDER IN SUIT TO MODIFY
PARENT-CHILD RELATIONSHIP-Page 3

1.     the right to receive information from any other conservator of the child concerning the health, education, and welfare of the child;

2.     the right to confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of the child;

3.     the right of access to medical, dental, psychological, and educational records of the child;

4.     the right to consult with a physician, dentist, or psychologist of the child;

5.     the right to consult with school officials concerning the child's welfare and educational status, including school activities;

6.     the right to attend school activities;

7.     the right to be designated on the child's records as a person to be notified in case of an emergency;

8.     the right to consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of the child; and

9.     the right to manage the estate of the child to the extent the estate has been created by the parent or the parent's family.

IT IS ORDERED that, at all times, EMILY STEPHENS, as a parent joint managing conservator, shall have the following rights:

ORDER IN SUIT TO MODIFY
PARENT-CHILD RELATIONSHIP-Page 4

1.     the right to receive information from any other conservator of the child concerning the health, education, and welfare of the child

2.     the right to confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of the child;

3.     the right of access to medical, dental, psychological, and educational records of the child;

4.     the right to consult with a physician, dentist, or psychologist of the child;

5.     the right to consult with school officials concerning the child's welfare and educational status, including school activities;

6.     the right to attend school activities;

7.     the right to be designated on the child's records as a person to be notified in case of an emergency, except during periods of supervised possession under Step 1 of this Order.

8.     the right to consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of the child; and

9.     the right to manage the estate of the child to the extent the estate has been created by the parent or the parent's family.

IT IS ORDERED that, at all times, MICHAEL GIBB and EMILY

STEPHENS, as parent joint managing conservators, shall each have the following duties:

1.      the duty to inform the other conservator of the child in a timely manner of significant information concerning the health, education, and welfare of the child; and

2.      the duty to inform the other conservator of the child if the conservator resides with for at least thirty days, marries, or intends to marry a person who the conservator knows is registered as a sex offender under chapter 62 of the Code of Criminal Procedure or is currently charged with an offense for which on conviction the person would be required to register under that chapter. IT IS ORDERED that this information shall be tendered in the form of a notice made as soon as practicable, but not later than the fortieth day after the date the conservator of the child begins to reside with the person or on the tenth day after the date the marriage occurs, as appropriate. IT IS ORDERED that the notice must include a description of the offense that is the basis of the person's requirement to register as a sex offender or of the offense with which the person is charged. WARNING: A CONSERVATOR COMMITS AN OFFENSE PUNISHABLE AS A CLASS C MISDEMEANOR IF THE CONSERVATOR FAILS TO PROVIDE THIS NOTICE.

ORDER IN SUIT TO MODIFY
PARENT-CHILD RELATIONSHIP-Page 6

IT IS ORDERED that, during his periods of possession, MICHAEL GIBB, as parent joint managing conservator, shall have the following rights and duties:

1.      the duty of care, control, protection, and reasonable discipline of the child;

2.      the duty to support the child, including providing the child with clothing, food, shelter, and medical and dental care not involving an invasive procedure;

3.      the right to consent for the child to medical and dental care not involving an invasive procedure; and

4.      the right to direct the moral and religious training of the child.

IT IS ORDERED that, during her periods of possession, EMILY STEPHENS, as parent joint managing conservator, shall have the following rights and duties:

1.      the duty of care, control, protection, and reasonable discipline of the child;

2.      the duty to support the child, including providing the child with clothing, food, shelter, and medical and dental care not involving an invasive procedure;

3.      the right to consent for the child to medical and dental care not involving an invasive procedure; and

ORDER IN SUIT TO MODIFY
PARENT-CHILD RELATIONSHIP-Page 7

4.	the right to direct the moral and religious training of the child.

IT IS ORDERED that MICHAEL GIBB, as a parent joint managing conservator, shall have the following rights and duty:

1.	the exclusive right to designate the primary residence of the child within Collin County, Texas, or a county contiguous to Collin County, Texas;

2.	the exclusive right, after conferring with the other conservator, to consent to medical, dental, and surgical treatment involving invasive procedures;

3.	the exclusive right, after conferring with the other conservator, to consent to psychiatric and psychological treatment of the child;

4.	the exclusive right to receive and give receipt for periodic payments for the support of the child and to hold or disburse these funds for the benefit of the child;

5.	the independent right, after conferring in advance with the other conservator, to represent the child in legal action and to make other decisions of substantial legal significance concerning the child;

6.	the independent right, after conferring in advance with the other conservator, to consent to marriage and to enlistment in the armed forces of the United States;

7. the exclusive right, after conferring with the other conservator, to make decisions concerning the child's education;

8. except as provided by section 264.0111 of the Texas Family Code, the independent right, after conferring in advance with the other conservator, to the services and earnings of the child;

9. except when a guardian of the child's estate or a guardian or attorney ad litem has been appointed for the child, the independent right, after conferring in advance with the other conservator, to act as an agent of the child in relation to the child's estate if the child's action is required by a state, the United States, or a foreign government; and

10. the independent duty to manage the estate of the child to the extent the estate has been created Michael Gibb or his family.

IT IS ORDERED that EMILY STEPHENS, as a parent joint managing conservator, shall have the following rights and duty:

1. the independent right, after conferring in advance with the other conservator, to represent the child in legal action and to make other decisions of substantial legal significance concerning the child;

2. the independent right, after conferring in advance with the other conservator, to consent to marriage and to enlistment in the armed forces of the United States;

3. except as provided by section 264.0111 of the Texas Family Code, the independent right, after conferring in advance with the other conservator, to the services and earnings of the child;

4. except when a guardian of the child's estate or a guardian or attorney ad litem has been appointed for the child, the independent right, after conferring in advance with the other conservator, to act as an agent of the child in relation to the child's estate if the child's action is required by a state, the United States, or a foreign government; and

5. the independent duty to manage the estate of the child to the extent the estate has been created by Emily Stephens or her family.

The Court finds that, in accordance with section 153.001 of the Texas Family Code, it is the public policy of Texas to assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child, to provide a safe, stable, and nonviolent environment for the child, and to encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage. IT IS ORDERED that the

ORDER IN SUIT TO MODIFY
PARENT-CHILD RELATIONSHIP-Page 10

primary residence of the child shall be Collin County, Texas, or a county contiguous to Collin County, Texas, and the parties shall not remove the child from Collin County, Texas, or a county contiguous to Collin County, Texas for the purpose of changing the primary residence of the child until modified by further order of the court of continuing jurisdiction or by written agreement signed by the parties and filed with the court.

IT IS FURTHER ORDERED that MICHAEL GIBB shall have the exclusive right to designate the child's primary residence within Collin County, Texas, or a county contiguous to Collin County, Texas.

IT IS FURTHER ORDERED that this geographic restriction on the residence of the child shall be lifted if, at the time MICHAEL GIBB wishes to remove the child from Collin County, Texas, or a county contiguous to Collin County, Texas for the purpose of changing the primary residence of the child, EMILY STEPHENS does not reside in Collin County, Texas, or a county contiguous to Collin County, Texas.

*Possession and Access*

1. *Modified Standard Possession Order*

IT IS ORDERED that each conservator shall comply with all terms and conditions of this Modified Standard Possession Order. IT IS ORDERED that this

Modified Standard Possession Order is effective immediately and applies to all periods of possession occurring on and after the date of the Mediated Settlement filed I this cause. IT IS, THEREFORE, ORDERED:

(a)    Definitions

1.    In this Modified Standard Possession Order "school" means the primary or secondary school in which the child is enrolled or, if the child is not enrolled in a primary or secondary school, the public school district in which the child primarily resides.

2.    In this Modified Standard Possession Order "child" includes each child, whether one or more, who is a subject of this suit while that child is under the age of eighteen years and not otherwise emancipated.

(b)    Mutual Agreement or Specified Terms for Possession

IT IS ORDERED that the conservators shall have possession of the child at times mutually agreed to in advance by the parties, and, in the absence of mutual agreement, it is ORDERED that the conservators shall have possession of the child under the specified terms set out in this Modified Standard Possession Order.

(c)    Approved Supervisors for Supervised Possession and Access

IT IS ORDERED that any of the following may be used as supervisors during the supervised possession and access of ▇▇▇▇▇▇ and that EMILY STEPHENS

shall be solely responsible for the cost of said supervisor:

    a.    Hannah's House, on-site or at an off-site location with an employee of Hannah's House

    b.    Misty Lewis

    c.    Meghan O'Shea

    d.    Rebecca Martin

    e.    Randy Nabors (Sierra Investigations)

    f.    A Family Affair on-site, or at an off-site location with an employee of A Family Affair

Supervised periods of possession will be supervised by the supervisors designated in this Order. Supervised visitations may take place at an offsite location selected by EMILY STEPHENS and the supervisor. The supervisor will supervise throughout the entire period of possession of ██████████ by EMILY STEPHENS in accordance with the provisions of this Order.

(d)    <u>Drug Testing</u>

IT IS ORDERED that EMILY STEPHENS shall submit to the following drug testing requirements:

    1.    Testing facility will be Surscan.

    2.    SurScan rules will determine what is a "no show."

3. A "no show" or diluted sample will be deemed a positive test result.

4. EMILY STEPHENS will submit to random standard 10 panel monthly drug tests at the requests of SurScan.

5. EMILY STEPHENS will submit to quarterly standard 10 panel hair testing, with the initial test to take place no later than February 5, 2014.

6. EMILY STEPHENS will be subject to the SurScan Random Drug Testing policies.

7. EMILY STEPHENS will be responsible for the cost of drug testing billed by SurScan.

8. The attorneys for MICHAEL GIBB and EMILY STEPHENS will be authorized to receive the results of each drug test, and EMILY STEPHENS shall execute such documents and sign any releases necessary to provide the test results to MICHAEL GIBB and/or counsel for MICHAEL GIBB and EMILY STEPHENS at the time of each test.

9. The obligation to submit to drug testing will end after two (2) consecutive years of testing beginning January 29, 2014 without a positive finding, which

two year period will begin on the date of entry of this Order, and

10. A positive finding on a drug test will return EMILY STEPHENS to the beginning of Step 1 possession rights until she advances out of Step 1 as set forth in this Order.

(e) <u>Supervised Possession and Access for Emily Stephens</u> **Step 1**

IT IS ORDERED that Emily Stephens shall have supervised possession and access to the child as follows:

Step 1 will continue for ten (10) consecutive weeks beginning January 29, 2014 and will require EMILY STEPHENS to exercise every period of possession during that ten (10) week period. EMILY STEPHENS may consent to the maternal grandparents being present with EMILY STEPHENS during no more than three (3) visits during a consecutive ten (10) week period. These possession rights are subject to the drug testing requirements described herein. Neither EMILY STEPHENS nor her parents may be denied any possession with the child due to any of the drug testing requirements. However, a positive test result, pursuant to Surscan rules and this Order:

1. During Step 1 will return EMILY STEPHENS to the beginning of a ten (10) consecutive week period of possession under the Step 1 possession schedule, upon completion of the on-going ten (10) consecutive week

period of possession currently being exercised by EMILY STEPHENS, and

2. During Steps 2 through 4 will immediately return EMILY STEPHENS to the beginning of a ten (10) consecutive week period of possession under Step 1.

The maternal grandparents may not participate in more than three (3) visits during any of the ten (10) consecutive week periods of possession, even if EMILY STEPHENS is required to re-start Step 1. Each ten (10) consecutive week period of possession will be completed prior to beginning another ten (10) consecutive week period of possession.

1. **Weekend Visitation** - EMILY STEPHENS will have the right to supervised possession of the child on Saturdays following the first, third, and fifth Friday of each month, beginning at 2:00 p.m. and ending that day at 5:00 p.m. Said visit will be supervised at all times. EMILY STEPHENS must be present with the child during the entire visit during this Step 1. The conservator can agree to change the time if the period of possession is in conflict with the child's regular extracurricular activity. These periods of possession shall not interfere with MICHAEL GIBBS holiday or summer possession. Any period of

possession for EMILY STEPHENS under Step 1, which is missed due to MICHAEL GIBB's ~~holiday or~~ summer possession will be made-up on another date. *mutually agreed upon*

2.  **Thursday Visitation** - EMILY STEPHENS will have supervised possession of the child on Thursdays preceding the second and fourth Friday of each month, beginning at 2:30 p.m. and ending that day at 5:30 p.m.   Said visit will be supervised at all times by employees of Hannah's House or A Family Affair or one of the supervisors designated in this Order. These periods of visitation will not interfere with MICHAEL GIBBS periods of extended summer possession.   Any period of possession for EMILY STEPHENS under Step 1, which is missed due to MICHAEL GIBB'S extended summer possession will be made-up on another date. *mutually agreed upon*

3.  **Telephone Visitation** - EMILY STEPHENS shall have the right to telephone visitation with the child on Wednesday of each week from 7:00 p.m. to 7:30 pm.   EMILY STEPHENS shall leave a message on MICHAEL GIBB's personal cellular telephone setting forth the number that she is calling from and MICHAEL GIBB shall return the call within 15 minutes.   If EMILY STEPHENS is in a facility and has

provided MICHAEL GIBB notification that she is in such facility, MICHAEL GIBB shall answer all calls between 7:00 and 7:30 p.m. on Wednesdays during such time period.

4. **Lunch at Child's School** - Following a hair test result with a negative finding, EMILY STEPHENS shall have the right to have lunch with the child one time per month, with appropriate notice/contact with the school/daycare in accordance with school policy for parents, and may bring the grandparents with her to have lunch with the child in accordance with school policy.

5. **Attendance at Activities** - Following a hair test result with a negative finding, EMILY STEPHENS shall have the right to attend the child's school functions and extracurricular activities, and may bring anyone with her that EMILY STEPHENS wishes to attend said events.

In the event EMILY STEPHENS has a conflict on any period of possession for work, or the child's activities conflict with any period of possession, or MICHAEL GIBB's summer possession conflicts with a period of possession, the parties will re-schedule EMILY STEPHENS visitation, to a mutually agreed upon day and time. EMILY STEPHENS shall give MICHAEL GIBB 24 hours advance notice of any work conflict which will necessitate changing a period of possession,

or of her intent not to exercise a period of possession. Notice shall be provided through Our Family Wizard.

   (f)   Possession and Access for Emily Stephens **Step 2**

   After completion of Step 1, EMILY STEPHENS shall have the following periods of possession of the child for Step 2 during the subsequent three (3) month period as stated below. These possession rights are subject to the drug testing requirements described herein.

   1.   **Weekend Visitation** - EMILY STEPHENS shall have the right to possession of the child on Saturdays following the first, third and fifth Friday of each month, beginning at 10:00 a.m. and ending that day at 4:00 p.m. EMILY STEPHENS must be present with the child during the entire visit during this Step 2. These periods of possession shall not interfere with MICHAEL GIBB's periods of extended summer possession. Any period of possession for EMILY STEPHENS under Step 2, which is missed due to MICHAEL GIBB's extended summer possession will be made-up on another mutually agreed upon date.

   2.   **Telephone Visitation** - EMILY STEPHENS shall have the right to telephone visitation with the child on Wednesday of each week from 7:00 p.m. to 7:30 pm. EMILY STEPHENS shall leave a message on

MICHAEL GIBB's cellular telephone setting forth the number that she is calling from and MICHAEL GIBB shall return the call within 15 minutes. If EMILY STEPHENS is in a facility and has provided MICHAEL GIBB notification that she is in such facility, MICHAEL GIBB shall answer all calls between 7:00 and 7:30 p.m. on Wednesdays during such time period.

3. **Lunch at Child's School** - Under Step 2, EMILY STEPHENS shall have the right to have lunch with the child at any time, with appropriate notice/contact with the school/daycare in accordance with school policy for parents, and may bring the grandparents with her to have lunch with the child in accordance with school policy.

4. **Attendance at Activities** - Under Step 2, EMILY STEPHENS shall have the right to attend the child's school functions and extracurricular activities, and may bring anyone with her that EMILY STEPHENS wishes to attend said events.

In the event EMILY STEPHENS has a conflict on any period of possession for work, or the child's activities conflict with any period of possession, or MICHAEL GIBB's extended summer possession conflicts with a period of possession, the parties will re-schedule EMILY STEPHENS visitation, to a mutually

ORDER IN SUIT TO MODIFY
PARENT-CHILD RELATIONSHIP-Page 20

agreed upon day and time. EMILY STEPHENS shall give MICHAEL GIBB 24 hours advance notice of any work conflict which will necessitate changing a period of possession.

    (g)    <u>Possession and Access for Emily Stephens **Step 3**</u>

After completion of Step 2, EMILY STEPHENS shall have the right to possession of the child under Step 3 during the subsequent three (3) month period as stated below. The possession rights are subject to the drug testing requirements described herein.

    1.    **<u>Weekend Visitation</u>** - EMILY STEPHENS shall have the right to possession of the child on each Saturday and Sunday following the first, third, and fifth Friday of each month, beginning at 9:00 a.m. on Saturday and ending at 6:00 p.m. on Saturday, and beginning at 9:00 a.m. on Sunday and ending at 6:00 p.m. on Sunday. These periods of possession shall not interfere with MICHAEL GIBBS periods of extended summer possession. Any period of possession for EMILY STEPHENS under Step 3, which is missed due to MICHAEL GIBB's extended summer possession will be made-up on another mutually agreed upon date.

    2.    **<u>Telephone Visitation</u>** - EMILY STEPHENS shall have the right to

telephone visitation with the child on Wednesday of each week from 7:00 p.m. to 7:30 pm. EMILY STEPHENS shall leave a message on MICHAEL GIBB's personal cellular telephone setting forth the number that she is calling from and MICHAEL GIBB shall return the call within 15 minutes. If EMILY STEPHENS is in a facility and has provided MICHAEL GIBB notification that she is in such facility, MICHAEL GIBB shall answer all calls between 7:00 and 7:30 p.m. on Wednesdays during such time period.

3. **Lunch at Child's School** - Under Step 3, EMILY STEPHENS shall have the right to have lunch with the child at any time, with appropriate notice/contact with the school/daycare in accordance with school policy for parents, and may bring the grandparents with her to have lunch with the child in accordance with school policy.

4. **Attendance at Activities** - Under Step 3, EMILY STEPHENS shall have the right to attend the child's school functions and extracurricular activities, and may bring anyone with her that EMILY STEPHENS wishes to attend said events.

In the event EMILY STEPHENS has a conflict on any period of possession for work, of the child's activities conflict with any period of possession, or

MICHAEL GIBB's extended summer possession conflicts with a period of possession, the parties will re-schedule EMILY STEPHENS visitation, to a mutually agreed upon day and time. EMILY STEPHENS shall give MICHAEL GIBB 24 hours advance notice of any work conflict which will necessitate changing a period of possession.

(h) Possession and Access for Emily Stephens **Step 4**

After completion of Step 3, EMILY STEPHENS shall have the right to possession of the child under Step 4 as follows. These possession rights are subject to the drug testing requirements described herein.

1. **Weekend Visitation** - EMILY STEPHENS shall have the right to possession of the child beginning at 6:00 p.m. on the first, third and fifth Friday of each month and ending on the immediately following Sunday at 6:00 p.m. These periods of possession shall not interfere with MICHAEL GIBBS periods of holiday or extended summer possession.

2. **Weekends Extended by Holiday** - Except as otherwise explicitly provided in this Modified Standard Possession Order, if a weekend period of possession by EMILY STEPHENS begins on a Friday that is a student holiday or teacher in-service day during the regular school

term, as determined by the school in which the child is enrolled, or a federal, state, or local holiday during the summer months when school is not in session, or if the period ends on or is immediately followed by a Monday that is such a holiday, that weekend period of possession shall begin at the time the child's school is regularly dismissed on the Thursday immediately preceding the Friday holiday, student holiday or teacher in-service day or end at 6:00 p.m. on that Monday holiday, student holiday or teacher in-service day, as applicable. These periods of possession shall not interfere with MICHAEL GIBBS periods of holiday or summer possession.

3. **Mid-Week/Thursday possession** - EMILY STEPHENS shall have the right to possession of the child beginning at 6:00 p.m. on Thursday of each week during the regular school term and ending at 8:00 p.m. on that day.

4. **Lunch at Child's School** - Under Step 4, EMILY STEPHENS shall have the right to have lunch with the child at any time, with appropriate notice/contact with the school/daycare in accordance with school policy for parents and may bring the grandparents with her to have lunch with the child in accordance with school policy.

ORDER IN SUIT TO MODIFY
PARENT-CHILD RELATIONSHIP-Page 24

5. **Extended Summer possession by EMILY STEPHENS for Summer of 2015** – In addition to regular weekend periods of possession set forth above, EMILY STEPHENS shall have the right to designate one seven (7) day period of exclusive possession by EMILY STEPHENS, beginning no earlier the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation in that year, provided that EMILY STEPHENS shall provide MICHAEL GIBB with twenty one (21) days advance written notice of her intention to exercise this period of possession and the dates of such period of possession. Said period of possession shall begin and end at 6:00 p.m. and shall not interfere with Father's Day.

6. **Extended Summer possession by EMILY STEPHENS for 2016 and Future Years** - With Written Notice by April 1 - If EMILY STEPHENS gives MICHAEL GIBB written notice by April 1 specifying an extended period of periods of summer possession of that year, EMILY STEPHENS shall have possession of the child for thirty (30) days beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days

before school resumes at the end of the summer vacation in that year, to be exercised in no more than two separate periods of at least seven (7) consecutive days each, as specified in the written notice. These periods of possession shall begin and end at 6:00 p.m. and shall not interfere with Father's Day Weekend.

**- Without Written Notice by April 1, 2016 or Future Years** - If EMILY STEPHENS does not give MICHAEL GIBB written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, EMILY STEPHENS shall have possession of the child for thirty (30) consecutive days in that year beginning at 6:00 p.m. on July 1 and ending at 6:00 p.m. on July 31.

7. **Spring Break in Even-Numbered Years** - In even-numbered years, beginning at the time the child's school is regularly dismissed on the day the child is dismissed from school for the school's spring vacation and ending at 6:00 p.m. on the day before school resumes after that vacation.

8. **Thanksgiving in Odd-Numbered Years** - In odd-numbered years, EMILY STEPHENS shall have the right to possession of the child beginning at 6:00 p.m. on the day the child is dismissed from school for

ORDER IN SUIT TO MODIFY
PARENT-CHILD RELATIONSHIP-Page 26

the Thanksgiving holiday and ending at 6:00 p.m. on the Sunday following Thanksgiving.

9. **Mother's Day** - EMILY STEPHENS shall have the right to possession of the child each year, beginning at 6:00 p.m. on the Friday preceding Mother's Day and ending at 6:00 p.m. on Mother's Day, provided that if EMILY STEPHENS is not otherwise entitled under this Modified Possession Order to present possession of the child, she shall pick up the child from MICHAEL GIBB's residence and return the child to that same place.

10. **Child's Birthday** - If a parent is not otherwise entitled under this Modified Possession Order to present possession of the child on the child's birthday, that parent shall have possession of the child beginning at 6:00 p.m. and ending at 8:00 p.m. on that day, provided that that parent picks up the child from the other parent's residence and returns the child to that same place.

11. **Christmas Holidays in Even-Numbered Years** - In even-numbered years, EMILY STEPHENS shall have the right to possession of the child beginning at 6:00 p.m. on the day the child is dismissed from school for the Christmas school vacation and ending at noon on

December 28.

**Christmas Holidays in Odd-Numbered Years** - In odd- numbered years, EMILY STEPHENS shall have the right to possession of the child beginning at noon on December 28 and ending at 6:00 p.m. on the day before school resumes after that Christmas school vacation.

Notwithstanding the periods of possession ORDERED for EMILY STEPHENS under Step 1 through Step 4, it is explicitly ORDERED that MICHAEL GIBB shall have a superior right of possession of the child as follows:

1. **Spring Break in All Odd-Numbered Years** - In odd-numbered years, beginning at 6:00 p.m. on the day the child is dismissed from school for the school's spring vacation and ending at 6:00 p.m. on the day before school resumes after that vacation.

2. **Summer Weekend Possession by MICHAEL GIBB in All Years while EMILY STEPHENS is Under Step 1 – 3 Visitation** – If MICHAEL GIBB gives EMILY STEPHENS written notice 30 days in advance of his elected one-week period of summer possession, MICHAEL GIBB may elect one seven (7) day period of extended summer possession during the summer school vacation. Any period of possession for EMILY STEPHENS which is missed due to

MICHAEL GIBB's period of extended summer possession, will be made up on another mutually agreed upon date.

2. **Summer Weekend Possession by MICHAEL GIBB in All Years while EMILY STEPHENS is Under Step 4 Visitation**- If MICHAEL GIBB gives EMILY STEPHENS written notice by April 15 of a year, MICHAEL GIBB shall have possession of the child on any one weekend beginning at 6:00 p.m. on Friday and ending at 6:00 p.m. on the following Sunday, during any one period of the extended summer possession by EMILY STEPHENS in that year, provided that MICHAEL GIBB picks up the child from EMILY STEPHENS and returns the child to that same place.

3. **Extended Summer Possession by MICHAEL GIBB in All Years while EMILY STEPHENS is Under Step 4 Visitation** - If MICHAEL GIBB gives EMILY STEPHENS written notice by April 15 of a year or gives EMILY STEPHENS fourteen days' written notice on or after April 16 of a year, MICHAEL GIBB may designate one weekend, beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation, during which

otherwise scheduled periods of possession by EMILY STEPHENS shall not take place in that year, provided that the weekend so designated does not interfere with EMILY STEPHENS's period or periods of extended summer possession.

4. **Thanksgiving in Even-Numbered Years** - In even-numbered years, MICHAEL GIBB shall have the right to possession of the child beginning at 6:00 p.m. on the day the child is dismissed from school for the Thanksgiving holiday and ending at 6:00 p.m. on the Sunday following Thanksgiving.

5. **Christmas Holidays in Even-Numbered Years** - In even-numbered years, MICHAEL GIBB shall have the right to possession of the child beginning at noon on December 28 and ending at 6:00 p.m. on the day before school resumes after that Christmas school vacation.

**Christmas Holidays in Odd-Numbered Years** - In odd-numbered years, MICHAEL GIBB shall have the right to possession of the child beginning at 6:00 p.m. on the day the child is dismissed from school for the Christmas school vacation and ending at noon on December 28.

6. **Father's Day** - MICHAEL GIBB shall have the right to possession of the child each year, beginning at 6:00 p.m. on the Friday preceding

Father's Day and ending at 8:00 a.m. on the Monday after Father's Day, provided that if MICHAEL GIBB is not otherwise entitled under this Standard Possession Order to present possession of the child, he shall pick up the child from EMILY STEPHENS's residence and return the child to that same place.

7. **Child's Birthday** - If a parent is not otherwise entitled under this Standard Possession Order to present possession of the child on the child's birthday, that parent shall have possession of the child beginning at 6:00 p.m. and ending at 8:00 p.m. on that day, provided that that parent picks up the child from the other parent's residence and returns the child to that same place.

*Undesignated Periods of Possession*

MICHAEL GIBB shall have the right of possession of the child at all other times not specifically designated in this Modified Possession Order for EMILY STEPHENS.

*General Terms and Conditions*

Except as otherwise expressly provided in this Order, the terms and conditions of possession of the child that apply regardless of the distance between the residence of a parent and the child are as follows:

ORDER IN SUIT TO MODIFY
PARENT-CHILD RELATIONSHIP-Page 31

1. **Surrender of Child by MICHAEL GIBB** - MICHAEL GIBB is ORDERED to surrender the child to EMILY STEPHENS at the beginning of each period of EMILY STEPHENS's possession as follows:

**Under Step 1:** MICHAEL GIBB will surrender the child to EMILY STEPHENS and the supervisor for that period of possession at either: (1) Hannah's House or A Family Affair, or (2) a location no more than 15 miles from the residence of MICHAEL GIBB, to be determined by EMILY STEPHENS and the supervisor. Supervised periods of possession will be supervised by the supervisors designated in this Order. Supervised visitations may take place at an offsite location selected by EMILY STEPHENS and the supervisor. **The supervisor will supervise throughout the entire period of possession of** ███████████ **by EMILY STEPHENS in accordance with the provisions of this Order.**

**Under Step 2-4:** MICHAEL GIBB will surrender the child to EMILY STEPHENS at either: (1) the residence of MICHAEL GIBB, or (2) at a mutually agreed upon mid-point location, ~~no more than 15 miles from the residence~~ of ~~MICHAEL GIBB~~, that is agreed upon in advance in writing on Our Family Wizard.

2. **Return of Child by EMILY STEPHENS** - EMILY STEPHENS is ORDERED to return the child to MICHAEL GIBB at the end of each period of

possession as follows:

**Under Step 1:** While with the supervisor, EMILY STEPHENS shall return the child to MICHAEL GIBB at the location where the child was surrendered by MICHAEL GIBB into the possession of EMILY STEPHENS and the supervisor.

**Under Step 2-4:** EMILY STEPHENS shall return the child to MICHAEL GIBB at: (1) the residence of ~~MICHAEL GIBB~~ Emily Stephens, or (2) at a mutually agreed upon mid-point location, ~~no more than 15 miles from the residence of MICHAEL GIBB~~, that is agreed upon in advance in writing on Our Family Wizard.

3. **Surrender of Child by EMILY STEPHENS** - EMILY STEPHENS is ORDERED to surrender the child to MICHAEL GIBB, if the child is in EMILY STEPHENS's possession or subject to EMILY STEPHENS's control, at the beginning of each period of MICHAEL GIBB's exclusive periods of possession, at the place designated in this Standard Possession Order.

4. **Return of Child by MICHAEL GIBB** - MICHAEL GIBB is ORDERED to return the child to EMILY STEPHENS, if EMILY STEPHENS is entitled to possession of the child, at the end of each of MICHAEL GIBB's exclusive periods of possession, at the place designated in this Standard Possession Order.

5. **Personal Effects** - Each conservator is ORDERED to return with the child the personal effects that the child brought at the beginning of the period of

possession.

6. **Designation of Competent Adult** - MICHAEL GIBB may designate any competent adult to pick up and return the child, as applicable. IT IS ORDERED that a conservator or a designated competent adult be present when the child is picked up or returned to MICHAEL GIBB.

Under Steps 2, 3, and 4, EMILY STEPHENS may designate any competent adult to pick up and return the child, as applicable. IT IS ORDERED that a conservator or designated competent adult be present when the child is picked up or returned to EMILY STEPHENS.

7. **Inability to Exercise Possession** - Each conservator is ORDERED to give notice to the person in possession of the child on each occasion that the conservator will be unable to exercise that conservator's right of possession for any specified period.

8. **Written Notice** - Written notice, including notice provided through Our Family Wizard shall be deemed to have been timely made if received or, if applicable, postmarked or dated before or at the time that notice is due.

9. **Parent's Responsibilities**

EMILY STEPHENS and MICHAEL GIBB shall each be responsible for contacting ███████████████ schools, clubs, coaches, etc. to obtain

schedules and details.

### 10. __Maternal Grandparent Visitation During Hospitalization, Incarceration, or In-Patient Treatment__

IT IS ORDERED that in the event EMILY STEPHENS is hospitalized, incarcerated, or otherwise in an in-patient treatment facility, the maternal grandparents will have the right to exercise EMILY STEPHENS' period of possession of the child on each Saturday following the first Friday of each month, beginning at 9:00 a.m. and ending that day at 6:00 p.m. Said period of possession will be supervised by one of the supervisors identified in this Order, with the costs thereof being paid by the maternal grandparents. Said periods of possession can be unsupervised for a period of up to three (3) hours. Satisfactory written proof of the hospitalization, incarceration, or in-patient treatment of EMILY STEPHENS will be provided to MICHAEL GIBB to establish that EMILY STEPHENS is unable to exercise her period of possession prior to the maternal grandparents exercising each such period of possession under this paragraph.

Written proof is defined as an intake sheet from a facility showing Emily Stephens' admittance into said facility, a written confirmation from said facility confirming Emily Stephens' admittance in said facility, or MICHAEL GIBB being given a written confirmation from EMILY STEHENS with the telephone number

for said facility and MICAHEL GIBB being allowed to call said facility and confirm that EMILY STEPHENS has been admitted into said facility and is unable to exercise her period of possession.

11. **Listing of Parents on Records**

IT IS ORDERED that MICHAEL GIBB and EMILY STEPHENS shall each list the other parent on all school records, doctors' records, extracurricular event records, etc., and shall grant permission with all service providers, schools, etc., so that the other parent can obtain information on services of the child.

This concludes the Possession Order.

2. *Duration*

The periods of possession ordered above apply to the child the subject of this suit while that child is under the age of eighteen years and not otherwise emancipated. These periods of possession are subject to the provisions for drug testing set out in this Order.

3. *Noninterference with Possession*

Except as expressly provided herein, IT IS ORDERED that neither conservator shall take possession of the child during the other conservator's period of possession unless there is a prior written agreement signed by both conservators, and agreement evidenced by Our Family Wizard communication, or in case of an

emergency.

4. *Termination of Orders*

The provisions of this order relating to conservatorship, possession, or access terminate on the remarriage of MICHAEL GIBB to EMILY STEPHENS unless a nonparent or agency has been appointed conservator of the child under chapter 153 of the Texas Family Code.

*Child Support*

IT IS ORDERED that EMILY STEPHENS is obligated to pay and shall pay to MICHAEL GIBB child support of fifty dollars ($50.00) per month, with the first payment being due and payable on March 1, 2014 and a like payment being due and payable on the first day of each month thereafter until the first month following the date of the earliest occurrence of one of the events specified below:

1. the child reaches the age of eighteen years or graduates from high school, whichever occurs later, subject to the provisions for support beyond the age of eighteen years set out below;

2. the child marries;

3. the child dies;

4. the child enlists in the armed forces of the United States and begins active service as defined by section 101 of title 10 of the United States Code; or

ORDER IN SUIT TO MODIFY
PARENT-CHILD RELATIONSHIP-Page 37

5. the child's disabilities are otherwise removed for general purposes; or

If the child is eighteen years of age and has not graduated from high school, IT IS ORDERED that EMILY STEPHENS's obligation to pay child support to MICHAEL GIBB shall not terminate but shall continue for as long as the child is enrolled-

1. under chapter 25 of the Texas Education Code in an accredited secondary school in a program leading toward a high school diploma or under section 130.008 of the Education Code in courses for joint high school and junior college credit and is complying with the minimum attendance requirements of subchapter C of chapter 25 of the Education Code or

2. on a full-time basis in a private secondary school in a program leading toward a high school diploma and is complying with the minimum attendance requirements imposed by that school.

<u>Withholding from Earnings</u>

IT IS ORDERED that any employer of EMILY STEPHENS shall be ordered to withhold from earnings for child support from the disposable earnings of EMILY STEPHENS for the support of HAYDEN WILLIAM GIBB.

IT IS FURTHER ORDERED that all amounts withheld from the disposable earnings of EMILY STEPHENS by the employer and paid in accordance with the

order to that employer shall constitute a credit against the child support obligation. Payment of the full amount of child support ordered paid by this order through the means of withholding from earnings shall discharge the child support obligation. If the amount withheld from earnings and credited against the child support obligation is less than 100 percent of the amount ordered to be paid by this order, the balance due remains an obligation of EMILY STEPHENS, and it is hereby ORDERED that EMILY STEPHENS pay the balance due directly to the state disbursement unit specified below.

On this date the Court signed an Income Withholding for Support.

Payment

IT IS ORDERED that all payments shall be made through the state disbursement unit at Texas Child Support Disbursement Unit, P.O. Box 659791, San Antonio, Texas 78265-9791, and thereafter promptly remitted to MICHAEL GIBB for the support of the child. IT IS ORDERED that each party shall pay, when due, all fees charged to that party by the state disbursement unit and any other agency statutorily authorized to charge a fee.

Change of Employment

IT IS FURTHER ORDERED that EMILY STEPHENS shall notify this Court and MICHAEL GIBB by U.S. certified mail, return receipt requested, of any change

ORDER IN SUIT TO MODIFY
PARENT-CHILD RELATIONSHIP-Page 39

of address and of any termination of employment. This notice shall be given no later than seven days after the change of address or the termination of employment. This notice or a subsequent notice shall also provide the current address of EMILY STEPHENS and the name and address of her current employer, whenever that information becomes available.

Clerk's Duties

IT IS ORDERED that, on the request of a prosecuting attorney, the title IV-D agency, the friend of the Court, a domestic relations office, MICHAEL GIBB, EMILY STEPHENS, or an attorney representing MICHAEL GIBB or EMILY STEPHENS, the clerk of this Court shall cause a certified copy of the Income Withholding for Support to be delivered to any employer.

*Health Care*

1. IT IS ORDERED that MICHAEL GIBB and EMILY STEPHENS shall each provide medical support for the child as set out in this order as additional child support for as long as the Court may order MICHAEL GIBB and EMILY STEPHENS to provide support for the child under sections 154.001 and 154.002 of the Texas Family Code. Beginning on the day MICHAEL GIBB and EMILY STEPHENS's actual or potential obligation to support the child under sections 154.001 and

154.002 of the Family Code terminates, IT IS ORDERED that MICHAEL GIBB and EMILY STEPHENS are discharged from the obligations set forth in this medical support order, except for any failure by a parent to fully comply with those obligations before that date.

2.    Definitions -

"Health Insurance" means insurance coverage that provides basic health-care services, including usual physician services, office visits, hospitalization, and laboratory, X-ray, and emergency services, that may be provided through a health maintenance organization or other private or public organization, other than medical assistance under chapter 32 of the Texas Human Resources Code.

"Reasonable cost" means the cost of health insurance coverage for a child that does not exceed 9 percent of MICHAEL GIBB's annual resources, as described by section 154.062(b) of the Texas Family Code.

"Reasonable and necessary health-care expenses not paid by insurance and incurred by or on behalf of a child" include, without limitation, any copayments for office visits or prescription drugs, the yearly deductible, if any, and medical, surgical, prescription drug, mental health-care services, dental, eye care, ophthalmological, and orthodontic charges. These reasonable and necessary health-care expenses do not include expenses for travel to and from the health-care

provider or for nonprescription medication.

"Furnish" means:

   a.   to hand deliver the document by a person eighteen years of age or older either to the recipient or to a person who is eighteen years of age or older and permanently resides with the recipient;

   b.   to deliver the document to the recipient by certified mail, return receipt requested, to the recipient's last known mailing or residence address;

   c.   to deliver the document to the recipient at the recipient's last known mailing or residence address using any person or entity whose principal business of that of a courier or deliverer of papers or documents either within or outside the United States.

   d.   to deliver the document to the recipient via Our Family Wizard.

3.   Findings on Health Insurance Availability- Having considered the cost, accessibility, and quality of health insurance coverage available to the parties, the Court finds:

Health insurance is available or is in effect for the child through MICHAEL GIBB's employment or membership in a union, trade association, or other organization at a reasonable cost.

IT IS FURTHER FOUND that the following orders regarding health-care coverage are in the best interest of the child.

4.     Provision of Health-Care Coverage -

As child support, MICHAEL GIBB is ORDERED to continue to maintain health insurance for the child who is the subject of this suit that covers basic health-care services, including usual physician services, office visits, hospitalization, laboratory, X-ray, and emergency services.

MICHAEL GIBB is ORDERED to maintain such health insurance in full force and effect on the child who is the subject of this suit as long as child support is payable for that child. MICHAEL GIBB is ORDERED to convert any group insurance to individual coverage or obtain other health insurance for the child within fifteen days of termination of his employment or other disqualification from the group insurance. MICHAEL GIBB is ORDERED to exercise any conversion options or acquisition of new health insurance in such a manner that the resulting insurance equals or exceeds that in effect immediately before the change.

MICHAEL GIBB is ORDERED to furnish EMILY STEPHENS a true and correct copy of the health insurance policy or certification and a schedule of benefits within thirty days of the signing of this order. MICHAEL GIBB is ORDERED to furnish EMILY STEPHENS the insurance cards and any other forms necessary for

use of the insurance within fifteen days of the signing of this order. MICHAEL GIBB is ORDERED to provide, within three days of receipt by him, to EMILY STEPHENS any insurance checks, other payments, or explanations of benefits relating to any medical expenses for the child that EMILY STEPHENS paid or incurred.

Pursuant to section 1504.051 of the Texas Insurance Code, IT IS ORDERED that if MICHAEL GIBB is eligible for insurance, and fails to provide insurance coverage for the child whether through work or another insurance provider, the insurer shall enroll the child on application of EMILY STEPHENS or others as authorized by law.

Pursuant to section 154.183(c) of the Texas Family Code, the reasonable and necessary health-care expenses of the child that are not reimbursed by health insurance are allocated as follows: EMILY STEPHENS is ORDERED to pay 50 percent and MICHAEL GIBB is ORDERED to pay 50 percent of the unreimbursed health-care expenses if, at the time the expenses are incurred, MICHAEL GIBB is providing health insurance as ordered.

The party who incurs a health-care expense on behalf of the child is ORDERED to submit to the other party all forms, receipts, bills, statements, and explanations of benefits reflecting the uninsured portion of the health-care expenses

within thirty days after he or she receives them. The nonincurring party is ORDERED to pay his or her percentage of the uninsured portion of the health-care expenses either by paying the health-care provider directly or by reimbursing the incurring party for any advance payment exceeding the incurring party's percentage of the uninsured portion of the health-care expenses within thirty days after the nonincurring party receives the forms, receipts, bills, statements, and explanations of benefits.

These provisions apply to all unreimbursed health-care expenses of the child who is the subject of this suit that are incurred while child support is payable for the child.

5. Secondary Coverage - IT IS ORDERED that if a party provides secondary health insurance coverage for the child, both parties shall cooperate fully with regard to the handling and filing of claims with the insurance carrier providing the coverage in order to maximize the benefits available to the child and to ensure that the party who pays for health-care expenses for the child is reimbursed for the payment from both carriers to the fullest extent possible.

6. Compliance with Insurance Company Requirements - Each party is ORDERED to conform to all requirements imposed by the terms and conditions of the policy of health insurance covering the child in order to assure the maximum

reimbursement or direct payment by the insurance company of the incurred health-care expense, including but not limited to requirements for advance notice to any carrier, second opinions, and the like. Each party is ORDERED to use "preferred providers," or services within the health maintenance organization, if applicable. Disallowance of the bill by a health insurer shall not excuse the obligation of either party to make payment. Excepting emergency health-care expenses incurred on behalf of the child, if a party incurs health-care expenses for the child using "out-of-network" health-care providers or services, or fails to follow the health insurance company procedures or requirements, that party shall pay all such health-care expenses incurred absent (1) written agreement of the parties allocating such health-care expenses or (2) further order of the Court.

7.    Claims - Except as provided in this paragraph, the party who is not carrying the health insurance policy covering the child is ORDERED to furnish to the party carrying the policy, within fifteen days of receiving them, any and all forms, receipts, bills, and statements reflecting the health-care expenses the party not carrying the policy incurs on behalf of the child. In accordance with section 1204.251 and 1504.055(a) of the Texas Insurance Code, IT IS ORDERED that the party who is not carrying the health insurance policy covering the child, at that party's option, may file any claims for health-care expenses directly with the

insurance carrier with and from whom coverage is provided for the benefit of the child and receive payments directly from the insurance company. Further, for the sole purpose of section 1204.251 of the Texas Insurance Code, EMILY STEPHENS is designated the managing conservator or possessory conservator of the child.

The party who is carrying the health insurance policy covering the child is ORDERED to submit all forms required by the insurance company for payment or reimbursement of health-care expenses incurred by either party on behalf of the child to the insurance carrier within fifteen days of that party's receiving any form, receipt, bill, or statement reflecting the expenses.

8.      Constructive Trust for Payments Received - IT IS ORDERED that any insurance payments received by a party from the health insurance carrier as reimbursement for health-care expenses incurred by or on behalf of the child shall belong to the party who paid those expenses. IT IS FURTHER ORDERED that the party receiving the insurance payments is designated a constructive trustee to receive any insurance checks or payments for health-care expenses paid by the other party, and the party carrying the policy shall endorse and forward the checks or payments, along with any explanation of benefits received, to the other party within three days of receiving them.

9.      WARNING - A PARENT ORDERED TO PROVIDE HEALTH

ORDER IN SUIT TO MODIFY
PARENT-CHILD RELATIONSHIP-Page 47

INSURANCE OR TO PAY THE OTHER PARENT ADDITIONAL CHILD SUPPORT FOR THE COST OF HEALTH INSURANCE WHO FAILS TO DO SO IS LIABLE FOR NECESSARY MEDICAL EXPENSES OF THE CHILD, WITHOUT REGARD TO WHETHER THE EXPENSES WOULD HAVE BEEN PAID IF HEALTH INSURANCE HAD BEEN PROVIDED, AND FOR THE COST OF HEALTH INSURANCE PREMIUMS OR CONTRIBUTIONS, IF ANY, PAID ON BEHALF OF THE CHILD.

*Miscellaneous Child Support Provisions*

### No Credit for Informal Payments

IT IS ORDERED that the child support as prescribed in this order shall be exclusively discharged in the manner ordered and that any direct payments made by EMILY STEPHENS to MICHAEL GIBB or any expenditures incurred by EMILY STEPHENS during EMILY STEPHENS's periods of possession of or access to the child, as prescribed in this order, for food, clothing, gifts, travel, shelter, or entertainment are deemed in addition to and not in lieu of the support ordered in this order.

### Support as Obligation of Estate

IT IS ORDERED that the provisions for child support in this order shall be an obligation of the estate of EMILY STEPHENS and shall not terminate on the death

ORDER IN SUIT TO MODIFY
PARENT-CHILD RELATIONSHIP-Page 48

of EMILY STEPHENS.   Payments received for the benefit of the child, including payments from the Social Security Administration, Department of Veterans Affairs or other governmental agency or life insurance proceeds, annuity payments, trust distributions, or retirement survivor benefits, shall be a credit against this obligation. Any remaining balance of the child support is an obligation of EMILY STEPHENS's estate.

Termination of Orders on Remarriage of Parties but Not on Death of Obligee

The provisions of this order relating to current child support terminate on the remarriage of MICHAEL GIBB to EMILY STEPHENS unless a nonparent or agency has been appointed conservator of the child under chapter 153 of the Texas Family Code. An obligation to pay child support under this order does not terminate on the death of MICHAEL GIBB but continues as an obligation to ███████

████████

*Parenting Facilitator*

IT IS ORDERED that Carrie Beaird is appointed as parenting facilitator for MICHAEL GIBB and EMILY STEPHENS.   The Court finds this is a high conflict case, that there is good cause shown, and it is in the best interest of the child the subject of this suit that a parenting facilitator be appointed.   The Court further finds that Carrie Beaird meets the requirements of section 153.6101 of the Texas Family

Code, as documented by Carrie Beaird.

All counsel are ordered to mail/fax a copy of this order and the fully completed information sheet to Carrie Beaird, MA, LPC-S, LCDC, Co-Parenting Solutions, 15150 Preston Road, Suite 300, Dallas, Texas 75248, Tel: 972-448-8797 within fifteen business days of the signing of this order to schedule the first appointment with the parenting facilitator.

The first parenting facilitation session shall be scheduled within thirty days of the date of the signing of this order. If no agreed-upon date for the first parenting facilitation session can be scheduled within thirty days, the parenting facilitator shall select a date within fifteen days, and all parties shall appear as directed by the parenting facilitator. Parenting facilitation sessions shall occur no more than once per month. The parties in attendance at each parenting facilitation session shall be left to the discretion of the parenting facilitator, who is specifically authorized to notify the Court if any party is failing to comply with the spirit and letter of this order or further order of the Court. The parenting facilitator may involve the extended family as she sees fit and may make recommendations for additional counseling.

The parenting facilitator's duties are limited to matters that will aid the parties in the following: identifying disputed issues; reducing misunderstandings; clarifying priorities; exploring possibilities for problem solving; developing

ORDER IN SUIT TO MODIFY
PARENT-CHILD RELATIONSHIP-Page 50

methods of collaboration in parenting; understanding parenting plans and reaching agreements about parenting issues to be included in a parenting plan; complying with the Court's order regarding conservatorship or possession of and access to the child; implementing parenting plans; obtaining training regarding problem solving, conflict management, and parenting skills; settling disputes regarding parenting issues and reaching a proposed joint resolution or statement of intent regarding those disputes; and monitoring compliance with the Court's orders. In performing these duties, the parenting facilitator shall comply with the standard of care that applies to the parenting facilitator's professional license.

The appointment of a parenting facilitator does not divest the Court of its exclusive jurisdiction to determine issues of conservatorship, support, and possession of and access to the child or the authority to exercise management and control of the suit. Accordingly, the parenting facilitator may not modify any order, judgment, or decree.

IT IS ORDERED that the fees of the parenting facilitator shall be paid 50 percent by MICHAEL GIBB and 50 percent by EMILY STEPHENS directly to the facilitator, unless the parenting facilitator determines otherwise. Each party is responsible for that party's defined portion of cost. Each party is ordered to pay directly to the parenting facilitator the assigned fees according to the policies of the

parenting facilitator.

IT IS ORDERED that MICHAEL GIBB and EMILY STEPHENS shall attempt to settle issues regarding possession and access to the child wtih the assistance of the parenting facilitator and shall attempt to reach a proposed resolution or statement of intent regarding that dispute.

Notwithstanding any rule, standard of care, or privilege that applies to the parenting facilitator's professional license, a communication made by a participant in parenting facilitation is subject to disclosure and may be offered in any judicial or administrative proceeding, if otherwise admissible under the rules of evidence. IT IS ORDERED that the parenting facilitator may be required to testify in any proceeding relating to or arising from the parenting facilitator's duties, including as to the basis for any recommendation made to the parties that arises from those duties.

IT IS ORDERED that the parenting facilitator shall keep a detailed record regarding meetings and contacts with the parties, attorneys, or other persons, and records of payment, and shall keep the records until the seventh anniversary of the date the facilitator's services are terminated, unless a rule adopted by the licensing authority that issues the facilitator's professional license establishes a different retention period. IT IS FURTHER ORDERED that no record created as part of the parenting facilitation that arises from the parenting facilitator's duties is confidential.

IT IS FURTHER ORDERED that, on request, the parenting facilitator shall make the records available to an attorney for a party, an attorney for the child, and a party who does not have an attorney.

IT IS ORDERED that, if the parenting facilitator has a conflict of interest with, or previous knowledge of, a party or a child the subject of this suit, the parenting facilitator shall, before accepting this appointment, disclose the conflict or previous knowledge to the Court, each attorney for a party, any attorney for the child, and any party who does not have an attorney and shall decline this appointment unless, after the disclosure, the parties and the child's attorney, if any, agree in writing to the parenting facilitator's appointment as parenting facilitator.

IT IS ORDERED that, before accepting this appointment, the parenting facilitator shall disclose to the Court, each attorney for a party, any attorney for the child, and any party who does not have an attorney the following: a pecuniary relationship with an attorney, party, or child in this suit; a relationship of confidence or trust with an attorney, party, or child in this suit; and other information regarding a relationship with an attorney, party, or child in this suit that might reasonably affect the parenting facilitator's ability to act impartially during service as parenting facilitator. IT IS ORDERED that if the parenting facilitator makes such a disclosure, the parenting facilitator shall decline this appointment unless, after the

disclosure, the parties and the child's attorney, if any, agree in writing to the parenting facilitator's service as parenting facilitator.

IT IS ORDERED that if the parenting facilitator discovers that the parenting facilitator has a conflict of interest with, or previous knowledge of, a party or a child the subject of the suit, the parenting facilitator shall immediately disclose the conflict or previous knowledge to the Court, each attorney for a party, any attorney for the child, and any party who does not have an attorney and shall withdraw unless, after the disclosure, the parties and the child's attorney, if any, agree in writing to the parenting facilitator's continuation as parenting facilitator.

IT IS ORDERED that the parenting facilitator must decline appointment in this suit if the parenting facilitator has served in any other professional capacity at any other time with any person who is a party to, or the subject of, this suit, or with any member of the family (as defined in section 71.003 of the Texas Family Code) of a party or subject, except as a teacher of coparenting skills in a class conducted in a group setting.

IT IS ORDERED that the parenting facilitator shall promptly and simultaneously disclose to each party's attorney, any attorney for the child, and any party who does not have an attorney the existence and substance of any communication between the parenting facilitator and another person, including a

party, a party's attorney, a child who is the subject of the suit, and any attorney for the child, if the communication occurred outside a parenting facilitation session and involved the substance of parenting facilitation.

The Court shall remove the parenting facilitator on the request and agreement of all parties, on the request of the parenting facilitator, on the motion of a party if good cause is shown, or if the parenting facilitator ceases to satisfy the minimum qualifications required by section 153.6101 of the Texas Family Code.

IT IS ORDERED that the joint appointments with the Parenting Facilitator shall be mutually selected by the parties on a date and time they are both available. The parties shall agree on said times in advance via Our Family Wizard and said appointments shall not conflict with EMILY STEPHENS' possession with the child under Step 1 or 2 herein.

*Counseling for Child*

IT IS ORDERED that the child shall attend counseling with ██████████ ████████████████████████ a therapist that has been agreed upon that is on Michael Gibb's insurance provider list, which list was provided to the Amicus Attorney for the Amicus Attorney to review and select said counselor. The frequency of the counseling sessions shall be determined by the counselor. IT IS ORDERED that MICHAEL GIBB and EMILY STEPHENS shall each deliver the

child to all counseling sessions as scheduled by the child's counselor when the child is in their possession. IT IS FURTHER ORDERED that MICHAEL GIBB AND EMILY STEPHENS shall each pay 50% of the cost for each counseling session for the child. IT IS ORDERED that the counselor will be contacted prior to ~~May 1~~ November 4, 2014, and that an appointment will be scheduled as soon as is practical following the telephone conference between ████████████████████████ ████████████ with counsel in this cause, which took place on March 17, 2014, for selection of a counselor. Joint counseling appointments, and appointments between the child and EMILY STEPHENS, shall be scheduled on dates agreeable to the parties, after communication regarding the counselor's available dates and the parties' schedules, and shall be confirmed via Our Family Wizard. Notice of the date and time of counseling appointments will be posted on Our Family Wizard within 24 hours of scheduling the appointment.

IT IS ORDERED that counseling appointments shall not be scheduled during EMILY STEPHENS' periods of possession under Step 1 or Step 2 of this Order, except by agreement of the parties.

IT IS ORDERED that the parties shall not change the counselor from the counselor specifically named above unless it is agreed upon in writing by the parties or recommended by the counselor.

ORDER IN SUIT TO MODIFY
PARENT-CHILD RELATIONSHIP-Page 56

IT IS ORDERED that MICHAEL GIBB shall transport the child to and from the counseling appointments while EMILY STEPHENS is under Step 1 of this Order. IT IS ORDERED that either parent shall participate in said counseling as is recommended by the counselor for the child.

In the event a counseling session, during Steps 1 through 3, conflicts with EMILY STEPHENS' period of possession, the parties will make-up the missed period of possession on a mutually agreed upon date.

*Our Family Wizard*

IT IS ORDERED that the parties will utilize "Our Family Wizard" and its website for communication, which will be used for exchange of information and calendaring of the following: receipts for medical reimbursements, medical information, doctor/dentist/counselor contact information, calendaring of doctor/dentist/counselor appointments, extracurricular activity dates, school contact information, school events, relaying information about ███████████ schedule changes, notice requirements included in this Order. Contact information for new activities for ████████████ chedule changes, and school events will be posted within 72 hours of learning of this information. IT IS ORDERED that each party shall respond to the other party's request or notification within 72 hours if a response is required.

ORDER IN SUIT TO MODIFY
PARENT-CHILD RELATIONSHIP-Page 57

The parties will be responsible for contacting ████████████ schools, clubs, coaches, etc. to obtain schedules and details.

Each party shall be responsible for payment of their own annual fee and set up costs for the website.

*Injunctive Relief*

The Court finds that an injunction against the parties should be granted as appropriate relief because there is no adequate remedy at law.

The permanent injunction granted below shall be effective immediately and shall be binding on MICHAEL GIBB and EMILY STEPHENS, on their agents, servants, employees, and attorneys, and on those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise.

IT IS ORDERED that MICHAEL GIBB and EMILY STEPHENS are enjoined from:

Making disparaging remarks or allowing 3rd parties to make disparaging remarks about the other conservator or the other conservator's family in the presence or within the hearing distance of the child.

*Service of Writ*

IT IS ORDERED that MICHAEL GIBB and EMILY STEPHENS shall be

ORDER IN SUIT TO MODIFY
PARENT-CHILD RELATIONSHIP-Page 58

deemed to be duly served with the writ on injunction.

*Medical Notification*

Each party is ORDERED to inform the other party within two (2) hours of any medical condition of the child requiring surgical intervention, hospitalization, or both.

Within 30 days after the Court signs this order, each party is ORDERED to execute -

1. all necessary releases pursuant to the Health insurance portability and Accountability Act (HIPAA) and 45 C.F.R. section 164.508 to permit the other conservator to obtain health-care information regarding the child; and

2. For all health-care providers of the child, an authorization for disclosure of protected health information to the other conservator pursuant to the HIPAA and 45 C.F.R. section 164.508.

Each party is further ORDERED to designate the other conservator as a person to whom protected health information regarding the child may be disclosed whenever the party executes an authorization for disclosure of protected health information pursuant to the HIPAA and 45 C.F.R. section 164.508.

*Required Information*

The information required for each party by section 105.006(a) of the Texas

ORDER IN SUIT TO MODIFY
PARENT-CHILD RELATIONSHIP-Page 59

Family Code is as follows:

Name:     MICHAEL GIBB

    Social Security number: ███████████

    Driver's license number: ████████    Issuing state: TX

    Current residence address: ██████████████████████

    Mailing address: ████████████████████████

    Home telephone number: ██████

    Name of employer: █████

    Address of employment: ████████████████████

    Work telephone number: ██████

Name:     EMILY STEPHENS

    Social Security number: ███████

    Driver's license number: ██████    Issuing state: TX

    Current residence address: ██████████████████████

    Mailing address: 2██████████████████████

    Home telephone number: ██████

    Name of employer: █████

    Address of employment: ████████████████████████

(?  Work telephone number: ███████████

*Required Notices*

EACH PERSON WHO IS A PARTY TO THIS ORDER IS ORDERED TO NOTIFY EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY OF ANY CHANGE IN THE PARTY'S CURRENT RESIDENCE ADDRESS, MAILING ADDRESS, HOME TELEPHONE NUMBER, NAME OF EMPLOYER, ADDRESS OF EMPLOYMENT, DRIVER'S LICENSE NUMBER, AND WORK TELEPHONE NUMBER. THE PARTY IS ORDERED TO GIVE NOTICE OF AN INTENDED CHANGE IN ANY OF THE REQUIRED INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY ON OR BEFORE THE 60TH DAY BEFORE THE INTENDED CHANGE. IF THE PARTY DOES NOT KNOW OR COULD NOT HAVE KNOWN OF THE CHANGE IN SUFFICIENT TIME TO PROVIDE 60-DAY NOTICE, THE PARTY IS ORDERED TO GIVE NOTICE OF THE CHANGE ON OR BEFORE THE FIFTH DAY AFTER THE DATE THAT THE PARTY KNOWS OF THE CHANGE.

THE DUTY TO FURNISH THIS INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY CONTINUES AS LONG AS ANY PERSON, BY VIRTUE OF THIS ORDER, IS UNDER AN

ORDER IN SUIT TO MODIFY
PARENT-CHILD RELATIONSHIP-Page 61

OBLIGATION TO PAY CHILD SUPPORT OR ENTITLED TO POSSESSION OF OR ACCESS TO A CHILD.

FAILURE BY A PARTY TO OBEY THE ORDER OF THIS COURT TO PROVIDE EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY WITH THE CHANGE IN THE REQUIRED INFORMATION MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

Notice shall be given to the other party by delivering a copy of the notice to the party by registered or certified mail, return receipt requested. Notice shall be given to the Court by delivering a copy of the notice either in person to the clerk of this Court or by registered or certified mail addressed to the District Clerk, 2100 Bloomdale Road, McKinney, Texas 75071. Notice shall be given to the state case registry by mailing a copy of the notice to State Case Registry, Contract Services Section, MC046S, P.O. Box 12017, Austin, Texas 78711-2017.

NOTICE TO ANY PEACE OFFICER OF THE STATE OF TEXAS: YOU MAY USE REASONABLE EFFORTS TO ENFORCE THE TERMS OF CHILD

ORDER IN SUIT TO MODIFY
PARENT-CHILD RELATIONSHIP-Page 62

CUSTODY SPECIFIED IN THIS ORDER. A PEACE OFFICER WHO RELIES ON THE TERMS OF A COURT ORDER AND THE OFFICER'S AGENCY ARE ENTITLED TO THE APPLICABLE IMMUNITY AGAINST ANY CLAIM, CIVIL OR OTHERWISE, REGARDING THE OFFICER'S GOOD FAITH ACTS PERFORMED IN THE SCOPE OF THE OFFICER'S DUTIES IN ENFORCING THE TERMS OF THE ORDER THAT RELATE TO CHILD CUSTODY. ANY PERSON WHO KNOWINGLY PRESENTS FOR ENFORCEMENT AN ORDER THAT IS INVALID OR NO LONGER IN EFFECT COMMITS AN OFFENSE THAT MAY BE PUNISHABLE BY CONFINEMENT IN JAIL FOR AS LONG AS TWO YEARS AND A FINE OF AS MUCH AS $10,000.

*Warnings*

WARNINGS TO PARTIES: FAILURE TO OBEY A COURT ORDER FOR CHILD SUPPORT OR FOR POSSESSION OF OR ACCESS TO A CHILD MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

ORDER IN SUIT TO MODIFY
PARENT-CHILD RELATIONSHIP-Page 63

FAILURE OF A PARTY TO MAKE A CHILD SUPPORT PAYMENT TO THE PLACE AND IN THE MANNER REQUIRED BY A COURT ORDER MAY RESULT IN THE PARTY'S NOT RECEIVING CREDIT FOR MAKING THE PAYMENT.

FAILURE OF A PARTY TO PAY CHILD SUPPORT DOES NOT JUSTIFY DENYING THAT PARTY COURT-ORDERED POSSESSION OF OR ACCESS TO A CHILD. REFUSAL BY A PARTY TO ALLOW POSSESSION OF OR ACCESS TO A CHILD DOES NOT JUSTIFY FAILURE TO PAY COURT-ORDERED CHILD SUPPORT TO THAT PARTY.

*Attorney's Fees*

IT IS ORDERED that attorney fees are to be borne by the party who incurred the costs.

*Amicus Fees*

The Court finds that Charity Boserine has satisfactorily discharged all of the legal duties and obligations under chapter 107 of the Texas Family Code, and IT IS ORDERED that Charity Boserine is hereby discharged and relieved of any further rights, duties, and responsibilities in this case. IT IS FURTHER ORDERED that Respondent, EMILY STEPHENS, pay any outstanding fees to Charity Borserine by cash, cashier's check, or money order.

ORDER IN SUIT TO MODIFY
PARENT-CHILD RELATIONSHIP-Page 64

*Costs*

IT IS ORDERED that costs of court are to be borne by the party who incurred them.

*Merger of Mediation Agreement*

This order is stipulated to represent a merger of a mediation agreement between the parties entered into on January 29, 2014 with Patrick J. Rogers. To the extent there exist any differences between the mediation agreement and this order, this order shall control in all instances.

*Discharge from Discovery Retention Requirement*

IT IS ORDERED that the parties and their respective attorneys are discharged from the requirement of keeping and storing the documents produced in this case in accordance with Rule 191.4(d) of the Texas Rules of Civil Procedure.

*Relief Not Granted*

IT IS ORDERED that all relief requested in this case and not expressly granted is denied. All other terms of the prior orders not specifically modified in this order shall remain in full force and effect.

*Date of Order*

SIGNED on _OCT. 28_, 2014.

_____
JUDGE PRESIDING

APPROVED AS TO FORM ONLY:

The Shapiro Law Firm
701 East 15th Street, Suite 204
PO Box 861720 (Zip 75086)
Plano, Texas 75074
Tel: 972-423-0033
Fax: 972-423-0077


By:_____
    Howard Shapiro
    State Bar No. 18110800
    E-Mail: familylaw@shapiro-law.net
    Attorney for Petitioner

Koons Fuller
5700 W. Plano Parkway, Suite 2200
Plano TX 75093
972 769 2727 Tel
972 769 0313 Fax


By:_____
    Kristy Piazza Blanchard
    State Bar No. 24046630
    E-Mail: kristyblanchardlaw@gmail.com
    Attorney for Respondent

ORDER IN SUIT TO MODIFY
PARENT-CHILD RELATIONSHIP-Page 66

Pfister, Borserine & Associates
6814 Lebanon Road, Suite 101
Frisco TX 75034
Tel 972-712-6700
Fax 972-712-9205


By: _____
    Charity Borserine
    Amicus Attorney
    State Bar No.: 24038875
    Email: cborserine@friscofamily.com


APPROVED AND CONSENTED TO AS TO BOTH FORM AND SUBSTANCE:


_____
MICHAEL GIBB, Petitioner


_____
EMILY STEPHENS, Respondent

3

§ 157.374. Welfare Of Child.

**Texas Statutes**

**Family Code**

**Title 5. The Parent-Child Relationship And The Suit Affecting The Parent-Child Relationship**

**Subtitle B. Suits Affecting The Parent-Child Relationship**

**Chapter 157. Enforcement**

**Subchapter H. Habeas Corpus**

*Current through the 2013 Regular and Special Sessions*

**§ 157.374. Welfare Of Child**

Notwithstanding any other provision of this subchapter, the court may render an appropriate temporary order if there is a serious immediate question concerning the welfare of the child.

**Cite as Tex. Fam. Code § 157.374**

**History.** Added by Acts 1995, 74th Leg., ch. 20, Sec. 1, eff. April 20, 1995.

4

§ 105.001. Temporary Orders Before Final Order.

**Texas Statutes**

**Family Code**

**Title 5. The Parent-Child Relationship And The Suit Affecting The Parent-Child Relationship**

**Subtitle A. General Provisions**

**Chapter 105. Settings, Hearings, And Orders**

*Current through the 2013 Regular and Special Sessions*

**§ 105.001. Temporary Orders Before Final Order**

(a) In a suit, the court may make a temporary order, including the modification of a prior temporary order, for the safety and welfare of the child, including an order:

   (1) for the temporary conservatorship of the child;

   (2) for the temporary support of the child;

   (3) restraining a party from disturbing the peace of the child or another party;

   (4) prohibiting a person from removing the child beyond a geographical area identified by the court; or

   (5) for payment of reasonable attorney's fees and expenses.

(b) Except as provided by Subsection (c), temporary restraining orders and temporary injunctions under this section shall be granted without the necessity of an affidavit or verified pleading stating specific facts showing that immediate and irreparable injury, loss, or damage will result before notice can be served and a hearing can be held. Except as provided by Subsection (h), an order may not be rendered under Subsection (a)(1), (2), or (5) except after notice and a hearing. A temporary restraining order or temporary injunction granted under this section need not:

   (1) define the injury or state why it is irreparable;

   (2) state why the order was granted without notice; or

   (3) include an order setting the cause for trial on the merits with respect to the ultimate relief requested.

(c) Except on a verified pleading or an affidavit in accordance with the Texas Rules of Civil Procedure, an order may not be rendered:

(1)     attaching the body of the child;

(2)     taking the child into the possession of the court or of a person designated by the court; or

(3)     excluding a parent from possession of or access to a child.

(d)     In a suit, the court may dispense with the necessity of a bond in connection with temporary orders on behalf of the child.

(e)     Temporary orders rendered under this section are not subject to interlocutory appeal.

(f)     The violation of a temporary restraining order, temporary injunction, or other temporary order rendered under this section is punishable by contempt and the order is subject to and enforceable under Chapter 157.

(g)     The rebuttable presumptions established in favor of the application of the guidelines for a child support order and for the standard possession order under Chapters 153 and 154 apply to temporary orders. The presumptions do not limit the authority of the court to render other temporary orders.

(h)     An order under Subsection (a)(1) may be rendered without notice and an adversary hearing if the order is an emergency order sought by a governmental entity under Chapter 262.

**Cite as Tex. Fam. Code § 105.001**

**History.** Amended By Acts 2003, 78th Leg., ch. 1036, Sec. 1, eff. Sept. 1, 2003.

Amended By Acts 1999, 76th Leg., ch. 1390, Sec. 3, eff. Sept. 1, 1999

Amended by Acts 1997, 75th Leg., ch. 575, Sec. 5, eff. Sept. 1, 1997

Added by Acts 1995, 74th Leg., ch. 20, Sec. 1, eff. April 20, 1995.

**815 S.W.2d 548 (Tex. 1991)**

**Leonard Charles DANCY, Sr., Relator,**

**v.**

**The Honorable Allen J. DAGGETT, Judge, Respondent.**

**No. D-1069.**

**Supreme Court of Texas.**

**September 18, 1991**

Gerald E. Bourque, Houston, for relator.

Ivy V. Ricketts, Houston, for respondent.

ON MOTION FOR REHEARING

PER CURIAM.

We grant Relator's motion for rehearing and issue the following opinion.

Leonard Dancy seeks mandamus relief from temporary orders issued in his divorce proceeding. We conditionally grant the requested relief.

The 310th Judicial District Court, Daggett, J., set a hearing on temporary orders in Dancy's divorce action for April 16, 1991. After that setting, Dancy's counsel, Gerald Bourque, received notice of an April 16, 1991 hearing in federal court on a separate matter: a criminal case in which Bourque was the defendant's counsel of record. Bourque promptly filed a motion to reset the hearing in the divorce case, attaching a copy of the notice he had received from the federal court.

Bourque appeared as scheduled at the April 16 hearing in federal court. On the same date, Judge Daggett reset the hearing in the divorce case for 9:00 a.m. on April 17.

On the morning of April 17, Bourque's secretary informed the 310th Judicial District Court that the federal case had been continued, and that Bourque would be unable to appear for the hearing in the divorce action. Subsequently, the judge in the federal case telephoned Judge Daggett and informed him that Bourque's attendance was still required in federal court. Nonetheless, Judge Daggett refused to postpone the hearing. At the close of the hearing, Judge Daggett awarded Dancy's wife custody of the couple's children and possession of the family home, and ordered Dancy to pay approximately $1,000 per month in child support and spousal maintenance.

After the trial court overruled his motion for rehearing, Dancy sought mandamus relief in the court of appeals. The court of appeals noted its strong disapproval of the trial court's actions, but still denied leave to file, stating, "We do not have the discretion to find that the trial court abused his discretion." 809 S.W.2d 629, 630 (citing *Hooks v. Fourth Court of Appeals,* 808 S.W.2d 56 (1991)).

In Hooks, we held that "a court of appeals does not possess independent discretion to grant or deny mandamus against a trial court." 808 S.W.2d at 59 (emphasis added). Rather, "[a]ny discretion is vested in the trial court, and the question before this court is whether the court of appeals erred in granting the writ of mandamus." Id. (citing *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917-18 (Tex.1985)). Our holding in Hooks did not alter the long-standing rule that

mandamus may issue to correct a clear abuse of discretion by a trial court. See, e.g., *Crane v. Tunks,* 160 Tex. 182, 328 S.W.2d 434, 440 (1959).

In the present case, the trial court's actions violated local rules regarding conflicts in docket settings, [1] and effectively deprived Dancy of representation at the hearing on his divorce case. Under these circumstances, we hold that the trial court abused its discretion by refusing to continue the proceedings until such time as Dancy's counsel was available. We further hold that mandamus is an appropriate remedy under these facts, since the trial court's issuance of temporary orders is not subject to interlocutory appeal. See Tex.Fam.Code § 11.11(g).

Page 550

Pursuant to Rule 122 of the Texas Rules of Appellate Procedure, without hearing oral argument, a majority of the court conditionally grants the writ of mandamus. The writ will issue only if the trial judge refuses to set aside the disputed orders in accordance with this opinion.

---------

Notes:

[1] Rule 4(b) of the Second Administrative Judicial District provides in part:

Attorney assigned to two courts for the same date:

(1) Whenever an attorney has two or more cases on trial dockets and is set for trial at the same time, it shall be the duty of that attorney to bring the matter to the attention of the judges concerned immediately upon learning of the conflicting settings.

(2) Insofar as practicable, judges should attempt to agree on which case has priority, otherwise the following priorities shall be observed by judges of the respective courts.

(i) Criminal cases have priority over civil cases.

....

Additionally, Rule 11 of the Judicial District Court of Harris County Family Trial Division states that "[n]o case shall lose its position on the trial docket for the week because counsel is engaged in another trial but the case shall remain on the docket until such time as counsel is available."

---------

In re Bustos, 122314 TXCA4, 04-14-00755-CV

**IN RE Oscar BUSTOS**

**No. 04-14-00755-CV**

**Court of Appeals of Texas, Fourth District, San Antonio**

**December 23, 2014**

Original Mandamus Proceeding.[1]

Sitting: Catherine Stone, Chief Justice Marialyn Barnard, Justice Rebeca C. Martinez, Justice.

**MEMORANDUM OPINION**

Catherine Stone, Chief Justice

On October 29, 2014, relator Oscar Bustos filed this mandamus proceeding complaining the trial court abused its discretion by sua sponte issuing temporary orders in the underlying suit for modification of conservatorship, possession, and access. The challenged temporary orders changed the parent with the exclusive right to determine the primary residence of the children. Bustos complains the trial court's oral ruling is not supported by any written pleadings. We agree and conditionally grant mandamus relief.

**BACKGROUND**

Bustos and real party in interest, Erika Vasquez, were divorced in 2008. Under the final decree of divorce, Bustos and Vasquez were named joint managing conservators of their two children. In 2011, a modification of the final decree was entered continuing the parents as joint conservators and designating Bustos as the conservator with the exclusive right to determine the primary residence of the children. The 2011 Order granted Vasquez possession of and access to the children under a standard possession order. Vasquez was also ordered to pay child support to Bustos.

In August 2014, Vasquez took possession of the children and failed to return them to Bustos's care. On October 8, 2014, after unsuccessfully attempting to locate the children, Bustos filed an application for writ of attachment in an effort to have the children returned to him. Bustos also filed a motion to modify the existing conservatorship order in which he sought to be named the children's sole managing conservator and to have Vasquez's access to the children restricted. He also requested temporary orders while the modification was pending, including a temporary restraining order. A judge signed an ex parte temporary restraining order and an order directing the clerk to issue a writ of attachment. The order set a hearing for October 22 on Bustos's writ of attachment and request for temporary orders.

On October 22, Vasquez appeared at the courthouse with the children for the scheduled hearing. The writ of attachment was executed by a sheriff's deputy at that time, and the children were taken to a "safe room" located in the courthouse.

At the hearing, the judge and an amicus attorney each interviewed the children outside the presence of their parents.[2] During discussion between the court and the parties, Bustos's attorney repeatedly pointed out that the hearing was set on his writ of attachment and request for temporary orders, and that Vasquez had no pleadings on file. Based on the judge's questioning of the parties and interview of the children, and considering the recommendation of the amicus attorney, the judge stated that she would deny Bustos's request for sole managing

conservatorship, ordered the children to be placed with their mother, who was to enroll them in school, and gave Vasquez the exclusive right to determine the children's primary residence. The court suspended Vasquez's child support obligation and ordered Bustos to begin paying child support as of November 1. When Bustos's lawyer asked to clarify whether she would be permitted to call any witnesses, the trial judge decided to recess the hearing in the interest of time. The lawyer again objected on the record to the trial court's sua sponte orders.

The hearing was re-convened on the following day for the purpose of allowing Bustos to call witnesses. Bustos's counsel passed the request to call witnesses based on the trial court's rulings of the previous day.[3] At the conclusion of the hearing, the trial court issued an oral ruling "procedurally" granting Bustos's writ of attachment, but placing the children in the possession and primary care of Vasquez, appointing an amicus attorney, ordering supervised visitation for Bustos, ordering counseling for the children, and requiring Bustos to pay child support beginning in November.

**ANALYSIS**

Mandamus will issue only to correct a clear abuse of discretion for which the relator has no adequate remedy at law. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding). "A trial court has no 'discretion' in determining what the law is or applying the law to the facts, " and "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Walker*, 827 S.W.2d at 840. Because temporary orders in a suit affecting a parent child relationship are not appealable, mandamus is an appropriate remedy when a trial court abuses its discretion. *See Dancy v. Daggett*, 815 S.W.2d 548, 549 (Tex. 1991) (orig. proceeding); *In re Herring*, 221 S.W.3d 729, 730 (Tex. App.—San Antonio 2007, orig. proceeding).

In this proceeding, Bustos contends the trial court abused its discretion by sua sponte modifying the 2011 Order designating him as the parent with the right to determine the primary residence of the children when there were no pleadings requesting or supporting such relief. Because of the lack of any pleadings requesting that Vasquez be given possession with the right to determine primary residence, Bustos asserts he was never put on notice of the need to present evidence necessary to the trial court's determination and to rebut Vasquez's testimony at the hearing.

In a suit affecting the parent child relationship, the trial court is authorized to make temporary orders for the safety and welfare of the children, including an order that modifies a prior temporary order. Tex. Fam. Code Ann. §105.001(a) (West 2014). Such temporary orders may include an order for temporary conservatorship, support, or the payment of reasonable attorney's fees and expenses. Tex. Fam. Code Ann. §105.001(a)(1), (2), (5) (West 2014). Such temporary orders may not include a temporary order which has the effect of changing the party with the right to determine primary residence during a pending modification, except in limited circumstances. *See* Tex. Fam. Code Ann. § 156.006(b) (West 2014).

The challenged order in this proceeding is an order modifying an existing order for conservatorship, access, and support. Therefore, Bustos was entitled to notice and a full adversary hearing before the entry of temporary orders. Tex. Fam. Code Ann. § 105.003(b) (West

2014) (providing for notice to parties whose rights and duties may be affected). The only matters set for hearing on October 22 were Bustos's application for writ of attachment and his motion for temporary orders seeking to limit Vasquez's possession of and access to the children. Vasquez had not filed or served any pleading asking the court to give her temporary custody of the children or seeking to change the right to determine primary residence. *See In re Chester*, 357 S.W.3d 103, 107 (Tex. App.—San Antonio 2011, orig. proceeding).

The record reveals that Bustos repeatedly objected to the lack of notice at the hearing on October 22. When the hearing resumed the following day, the trial court stated on the record that Bustos was given the opportunity to call witnesses and present evidence at the hearing, but chose not to. Without proper notice that the existing orders might be modified to give Vasquez the right to determine primary residence, Bustos had no reason to be prepared to present evidence in his defense or to rebut Vasquez's testimony. *See Chester*, 357 S.W.3d at 107; *see also* Tex. Fam. Code Ann. § 105.001(a), (b).

We conclude the trial court abused its discretion in entering the challenged temporary orders — which significantly modified the existing orders for conservatorship and access — without proper notice to Bustos and an opportunity for a full adversary hearing. *See* Tex. Fam. Code Ann. § 105.001(a), (b), (h); *Chester*, 357 S.W.3d at 107; *Herring*, 221 S.W.3d at 730. Having concluded the trial court abused its discretion in entering the challenged orders on the basis of lack of notice, we do not find it necessary to address the remaining issues presented to this court.[4]

**CONCLUSION**

Based on the foregoing analysis, we hold the trial court clearly abused its discretion in modifying the existing orders for conservatorship, access, and support, as well as the designation of the person with the right to determine the children's primary residence, without proper notice and a full evidentiary hearing. Accordingly, we conditionally grant the petition for writ of mandamus and order the trial court to withdraw its orders orally pronounced on October 22 and 23, 2014, modifying the existing 2011 Order governing conservatorship, possession, and access to the children. The writ will issue only if we are advised the trial court has failed to comply with this court's orders.

---------

Notes:

[1] This proceeding arises out of Cause No. 2007CI07181, styled *In the Interest of E.B. and O.S.B. II, Minor Children*, pending in the 285th Judicial District Court, Bexar County, Texas, the Honorable Antonia Arteaga presiding.

[2] It does not appear that a record of these interviews was made.

[3] We note that the trial court's sua sponte ruling stated on October 23 was the same ruling previously announced on October 22. Given the court's ruling on October 22, counsel for Bustos stated she had no reason to believe that witnesses were needed the following day when the hearing resumed.

[4] The trial court stated her belief that, after interviewing the children, she could not return the children to Bustos because of a fear of abuse. While such an order may be permitted under section 156.006(b)(1) of the Texas Family Code, there must be pleadings and notice to support

such an order. *See* Tex. Fam. Code Ann. §§ 156.006(b)(1) (permitting a change in the exclusive right to determine primary residence when such an order is in the child's best interest and "is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development"). Alternatively, the proper authorities could have been contacted to report suspected abuse or neglect. *See* Tex. Fam. Code Ann. § 261.101 (West 2014).

---------

**545 S.W.2d 955 (Tex. 1977)**

**Jean C. McELREATH, Relator,**

**v.**

**Wells STEWART, Judge, Court of Domestic Relations, Respondent.**

**No. B--6345.**

**Supreme Court of Texas.**

**January 26, 1977**

Page 956

William E. Wright, Houston, for relator.

Wells Stewart, pro se.

McGEE, Justice.

This is an original mandamus proceeding where Jean C. McElreath, relator, seeks a writ of mandamus compelling Wells Stewart, Judge of the Court of Domestic Relations Number One of Harris County, to vacate his order denying relator's writ of habeas corpus and to issue the requested writ. The primary question presented in this case is whether the trial court judge was justified in his denial of habeas corpus relief based on the 'serious immediate welfare' provision of section 14.10(c) of the Texas Family Code, despite a valid judgment giving custody to the party seeking the writ of habeas corpus. We hold that in this case reliance on section 14.10(c) was unjustified and the writ of habeas corpus should have been issued.

Jean and Ross McElreath were divorced February 7, 1976 in the Court of Domestic Relations Number One of Harris County, Texas. Jean McElreath (Jean) was given custody of the three minor children and Ross McElreath (Ross) was required to make child support payments. Subsequent to the divorce decree, the two older children left Jean and began to live with their father, Ross. Jean and the youngest child moved to San Antonio where Jean attended law school. In 1974 Ross filed suit in San Antonio to modify the previous order of the domestic relations court in Harris County. On July 24, 1974 the district court in San Antonio, after determining that no other court had continuing jurisdiction, denied Ross' motion to modify the Harris County court's order. The court also denied Ross' motion to be appointed managing conservator of Gregory McElreath (Gregory). Pursuant to the order of the district court in San Antonio, Jean was to continue as managing conservator and continue to receive child support payments from Ross. Jean and Gregory moved to Austin and in the summer of 1976 Gregory traveled to Houston to visit his father. Under the terms of the 1974 order, Ross was required to return Gregory to his mother in Austin 'at least twenty days prior to the commencement of school.' Jean allowed Gregory to remain with his father longer than specified in the court order so Gregory could complete a vacation to Disneyworld in Florida. Jean expected Gregory to return to Austin on August 22, 1976 and when Gregory failed to arrive on the bus, Jean telephoned Gregory's father in Houston. Jean was informed by Gregory's stepmother that Ross was out of town but had instructed that Gregory was not to be returned to Austin.

Jean filed her application for writ of habeas corpus, writ of attachment and temporary

restraining order in the Domestic Relations Court Number One of Harris County on August 25, 1976. Judge Stewart issued the writ of attachment but voided it the next day. A hearing was then commenced on the application for writ of habeas corpus. Jean submitted into evidence the 1974 district court order giving her custody of Gregory and denying Ross' motion to be appointed managing conservator. The trial court advised Jean that evidence would be heard concerning the immediate welfare of

Page 957

the child pursuant to section 14.10(c) of the Texas Family Code. The scope of the hearing which followed greatly exceeded the narrow considerations necessary to determine the applicability of section 14.10(c). It is fair to say that the proceeding resembled a full-fledged hearing to modify the custody of a child. During the hearing the trial court was informed that Gregory, who had become 14 years of age, had signed an affidavit under section 14.07 of the Family Code, stating that he wished to live with his father. On August 30, 1976 Ross filed a motion to be appointed temporary managing conservator and to either abate the child support payments or have the payments made to himself as temporary managing conservator. The trial court granted Ross' motion on September 13, 1976 making Ross temporary managing conservator and withdrawing the writ of attachment. Jean filed a writ of mandamus with this court on November 17, 1976, to which Judge Stewart made no response.

It is our opinion that the trial court erred in expanding the scope of the habeas corpus hearing to include matters which did not concern the immediate welfare of the child as provided in section 14.10 of the Texas Family Code. The Family Code provides:

' § 14.10. Habeas Corpus.

(a) If the right to possession of a child is presently governed by a court order, the court in a habeas corpus proceeding involving the right to possession of the child shall compel return of the child to the relator if and only if it finds that the relator is presently entitled to possession by virtue of the court order.

(b) The court shall disregard any cross action or motion pending for modification of the decree determining managing conservatorship, possession, or support of or access to the child unless it finds that the previous order was granted by a court of another state or nation and that:

(1) the court did not have jurisdiction of the parties; or

(2) the child has been within the state for at least 12 months immediately preceding the filing of the petition for the writ.

(c) The court may issue any appropriate temporary order if there is a serious immediate question concerning the welfare of the child.

(d) While in this state for the sole purpose of compelling the return of a child through a habeas corpus proceeding, the relator is not amenable to civil process and is not subject to the jurisdiction of any civil court except the court in which the writ is pending and in that court only for the purpose of prosecuting the writ.

(e) If the right to possession of a child is not governed by a court order, the court in a habeas corpus proceeding involving the right of possession of the child shall compel return of the child to the relator if, and only if, it finds that the relator has a superior right to possession of the child by

virtue of the rights, privileges, duties, and powers of a parent as set forth in Section 12.04 of this code.

(f) The court shall disregard any motion for temporary or permanent adjudication relating to the possession of the child in a habeas corpus proceeding brought under Subsection (e) of this section unless at the time of the hearing an action is pending under this chapter, in which case the court may proceed to issue any temporary order as provided by Section 11.11 of this code.'

This court has recently held that where there is a valid existing judgment of child custody, the issues of best interest of the child and right of possession should not be re-litigated in a habeas corpus proceeding. *Standley v. Stewart,* 539 S.W.2d 882, 883 (Tex.1976). The order of the trial court in this case provides in pertinent part:

Page 958

'Upon consideration of the evidence and the wishes of the minor child, the court was of the opinion that the best interests of the child would best be served if the application for writ was denied and the court thus rendered its decision denying the subject application for writ of habeas corpus in open court on August 30, 1976.

'In response to the cross motion of respondent Ross McElreath for 'Appointment as Temporary Managing Conservator,' the court finds, pursuant to the authority of § 14.10(c), TEXAS FAMILY CODE ANN. (1975), that there is a serious immediate question concerning the welfare of the child in question and that the best interests of the child shall be served by granting said cross motion. It is, accordingly, ORDERED that Ross McElreath be, and he is hereby, named Temporary Managing Conservator of the child, Gregory Cornelius McElreath, and shall possess all rights and privileges attendant thereto. It is further ORDERED thereto that any and all obligations of the said Ross McElreath to pay child support, as heretofore ordered with reference to the support of the said child, and which may accrue during the pendency of this Order, shall be paid to himself as Temporary Managing Conservator of the child.'

It is evident that the order contemplated more than the immediate welfare of the child and this was error. Standley v. Stewart, supra.

The only relevant distinction in the Standley case and the situation here is that in Standley the trial court specifically stated that it was not acting under the provisions of section 14.10(c). 539 S.W.2d at 883. The order of the trial court in our case expressly states that it was acting pursuant to section 14.10(c), but we hold that the trial court's reliance on that section was not justified in this case. This court recognizes that a trial court can exercise great discretion in issuing orders for the immediate protection of a child and it is not the intention of this court to usurp the discretionary power of trial courts in such situations. There are no cases discussing the degree of seriousness or immediacy which would allow a court to issue a temporary order under section 14.10(c). There are cases, however, which discuss the situations necessary to issue temporary custody orders. This court has held that if the safety and well-being of a child are in jeopardy, a trial court may enter an order vesting temporary custody in a party other than the child's legal custodian. *Page v. Sherrill,* 415 S.W.2d 642, 645 (Tex.1967). The court contemplated a situation where the child was in imminent danger of physical or emotional harm and immediate action was necessary to protect the child. 415 S.W.2d at 645; See *Brown v. Brown,* 500 S.W.2d 210, 214 (Tex.Civ.App.--

Texarkana 1973, no writ); *Rodriguez v. Vela,* 488 S.W.2d 872, 876--877 (Tex.Civ.App.--San Antonio 1972, no writ) (concurring and dissenting opinions); *Widner v. Pixley,* 439 S.W.2d 403, 406--407 (Tex.Civ.App.--Beaumont 1969, no writ).

The record in this case discloses nothing which could make Gregory's situation serious and immediate. Gregory's father and stepmother both testified that Gregory would be hurt and upset if he returned to his mother. In chambers, Gregory testified that it would hurt him to return to his mother because he did not want to live with her. Gregory's reasons for not wanting to return to his mother were because his mother gave him more responsibilities than his father, she nagged him, and sometimes made him mad. There is absolutely no contention that Gregory is not loved and well cared for by his mother. We hold that the situation in this case falls far short of the necessary statutory requisites of immediacy and seriousness.

This court is empowered to issue a writ of mandamus when a trial court acts beyond its power and in so doing vacates or

Page 959

changes a final adjudication. *Standley v. Stewart,* 539 S.W.2d 882, 883 (Tex.1976); *McHone v. Gibbs,* 469 S.W.2d 789 (Tex.1971).

A writ of mandamus will issue directing Judge Stewart to set aside his order of September 13, 1976 and to issue the writ of habeas corpus.

**649 S.W.2d 297 (Tex. 1983)**

**Frazier B. WHATLEY, Relator,**

**v.**

**Hon. O'Neal BACON, Judge, Respondent.**

**No. C-1812.**

**Supreme Court of Texas.**

**April 20, 1983**

Delmar Shelley Hilliard, Newton, for relator.

Bill A. Martin, Newton, Richard C. Hile, Jasper, for respondent.

KILGARLIN, Justice.

This is an original mandamus proceeding. Relator, Frazier Whatley, requests this Court to direct the Honorable O'Neal Bacon, Judge of the 1st Judicial District Court of Newton County, to vacate his order appointing Louis and Betty Knighton, maternal grandparents, as temporary managing conservators of Whatley's children, Loyd Lee Whatley, Ray Ferguson Whatley, and Charles Brian Whatley. Whatley also requests this Court to direct Judge Bacon to dissolve two writs of habeas corpus ordering Whatley to turn over his children to the Knightons. We agree that Judge Bacon improperly issued the temporary order and the writs of habeas corpus and, therefore, conditionally grant the writ of mandamus.

On May 14, 1981, the children's mother, Mary Whatley, sued Frazier Whatley for divorce in the 310th District Court of Harris County, Texas. Thereafter, Mary Whatley filed another petition for divorce on July 9, 1981, in the 1st District Court of Newton County, Texas. The Whatleys apparently reconciled for a brief time. Later, however, Mary and the children moved back to Newton County where the Knightons resided. On December 17, 1981, Frazier Whatley filed yet another petition for divorce in the 309th District Court of Harris County, Texas. Mary Whatley died on February 4, 1982. Prior to her death there had been no orders entered in any of the three divorce actions.

Two days after their daughter's death, the Knightons filed an application for writ of habeas corpus and a request for writ of attachment in Judge Bacon's court under the divorce action originally filed by Mrs. Whatley in Newton County. Judge Bacon ordered the writ of attachment that same day, so the sheriff took the three children and delivered them to the Knightons. Frazier Whatley was served at graveside during his wife's funeral ceremonies; he was ordered to have the three children in court on February 16, 1982, the date scheduled for the hearing on the Knightons' application for writ of habeas corpus.

On the day of the hearing, the Knightons filed an original petition affecting the parent-child relationship and application for relief under section 11.11 of the Texas Family Code. Whatley was never served with a copy of that instrument. Ten minutes after the Knightons had filed their suit, Judge Bacon held a hearing on both the applications for the writ of habeas corpus and temporary relief under section 11.11. Judge Bacon proceeded, notwithstanding the fact that Whatley had no

notice of the suit affecting the parent-child relationship and was not present at the hearing. Whatley did not attend, thinking that the hearing's only purpose was for him to turn over the children, which he had already done.

Judge Bacon issued temporary orders on February 24, 1982, reciting the February 16 hearing on the habeas corpus application and the application for temporary relief under section 11.11. The temporary orders named the Knightons as managing conservators of Whatley's children.

On or about February 15, 1982, Frazier Whatley filed an application for writ of habeas corpus in the 246th District Court of Harris County. A hearing was set for March 16, 1982; the Knightons were served and were present in court. On March 22, 1982, Judge John W. Peavy, Jr. signed an order that the three children be returned to Whatley. The Knightons complied and Whatley took possession of the boys.

Thereafter, on April 6, 1982, the Knightons filed a second application for writ of habeas corpus in Judge Bacon's court in Newton County, requesting return of the children. After conducting a hearing, Judge Bacon again issued a writ of habeas corpus. Whatley returned the children to the Knightons on April 20, 1982.

Page 299

The issue presented by this case is whether Judge Bacon had the authority to issue any orders affecting possession of Whatley's children. At the outset, we note that there is a distinction in this case between granting temporary orders and issuing writs of habeas corpus. We consider each separately.

The Knightons urge that Judge Bacon had the power to issue temporary orders for three reasons. First, the Knightons contend that Judge Bacon had jurisdiction over the children pursuant to the divorce action that Mrs. Whatley had filed in Newton County. Although the Family Code authorizes a district judge to issue temporary orders affecting the possession of children in a divorce suit, [1] that provision is not applicable to the instant case. Death of a party abates a divorce action and its incidental inquiries of property rights and child custody. *Garrison v. Texas Commerce Bank,* 560 S.W.2d 451 (Tex.Civ.App.--Houston [1st Dist.] 1977, writ ref'd n.r.e.); *Parr v. White,* 543 S.W.2d 445 (Tex.Civ.App.--Corpus Christi 1976, writ ref'd n.r.e.). The proper procedural disposition of a divorce action when one of the parties dies is dismissal. Ex parte Cahill, 286 S.W.2d 210 (Tex.Civ.App.--Beaumont 1955, no writ).

In the instant case, Judge Bacon issued all the temporary orders after the death of Mrs. Whatley. Accordingly, the February 24 order appointing temporary managing conservators could not have been issued pursuant to an underlying divorce suit because the divorce action in Newton County was abated on February 4, 1982, the date of Mrs. Whatley's death. Similarly, the writ of attachment was not properly issued pursuant to the divorce suit.

Second, the Knightons urge that Judge Bacon could have issued a valid temporary order appointing managing conservators pursuant to the suit affecting the parent-child relationship. Section 11.09 of the Texas Family Code provides that a parent whose rights have not been terminated or as to whom service of process has not been waived is entitled to service of citation on the filing of a petition in a suit affecting the parent-child relationship. Further, section 11.11(b) of the Family Code provides that an order for temporary conservatorship of a child may not be

entered except after notice and a hearing. In the instant case, Judge Bacon's February 24 order recited that Whatley had been served with notice of the Knightons' suit. However, the district clerk of Newton County subsequently gave testimony in an April 16, 1982, hearing that Whatley had not been served. Absent proper notice as required by section 11.11(b), Judge Bacon was not entitled to issue temporary orders pursuant to the Knightons' suit at the February 24 hearing.

Third, the Knightons contend that Judge Bacon had the power to issue temporary orders pursuant to the application for writ of habeas corpus filed on February 6, 1982, by virtue of section 14.10(c) of the Texas Family Code. While it is true that a trial judge may issue a temporary order in a habeas corpus proceeding pursuant to section 14.10(c), that section requires that there must be a "serious immediate question concerning the welfare of the child." This Court previously has held that an order made pursuant to section 14.10(c) must include a court's finding of a serious and immediate question as is required by the plain language of the statute. *McElreath v. Stewart,* 545 S.W.2d 955, 958 (Tex.1977).

In the instant case, Judge Bacon's February 24 order does not mention section 14.10(c) nor does the order include a fact finding of "a serious immediate question concerning the welfare of the children," as we required in McElreath. Moreover, we have not been presented with a Statement of Facts of the February 16 hearing and have no way of knowing what evidence was adduced at that time. The Knightons' application for writ of habeas corpus filed on February 6 does not make any allegation that there existed a serious immediate question concerning the welfare of the Whatley children. Therefore, we conclude that the

Page 300

February 24 order appointing the Knightons as temporary managing conservators was not properly made pursuant to section 14.10(c) of the Texas Family Code.

Having concluded that Judge Bacon's temporary orders affecting possession of the children are invalid, we next consider the effect of the three writs of habeas corpus issued in this case. Texas Family Code section 14.10 governs the issuance of all three writs of habeas corpus. Therefore, we judge the validity of the writs by considering whether they conform to at least one of the criteria set out in that section.

First, we examine the writ of habeas corpus issued by Judge Bacon on February 6, 1982. Section 14.10(e) of the Texas Family Code provides that if the right to possession of a child is not governed by court order, the court shall compel return of the child to the relator if it finds that the relator has a superior right to possession of the child by virtue of the rights set forth in section 12.04 of the Family Code. [2] We are of the opinion that section 14.10(e) applies to Judge Bacon's first writ because there were no existing court orders affecting the right to possession of the children at the time the Knightons applied for a writ of habeas corpus, other than the invalid temporary orders issued by Judge Bacon. Therefore, the Knightons were not entitled to possession of the children because they had no parental rights pursuant to section 12.04.

Next, we consider the effect of the writ of habeas corpus issued by Judge Peavy in Harris County on March 22, 1982. Similar to Judge Bacon's first writ, we are of the opinion that 14.10(e) applies to the writ issued by Judge Peavy. The difference between the two writs, however, is significant. Unlike the Knightons, Whatley, as the sole parent, was entitled to possession of the

children pursuant to section 12.04. Therefore, Whatley was entitled to a writ of habeas corpus under section 14.10(e).

Finally, we consider the validity of Judge Bacon's second writ of habeas corpus issued on April 19, 1982. By the time Judge Bacon issued this final writ of habeas corpus, Harris County District Judge Peavy had issued a valid habeas corpus order restoring possession of the children in Whatley. Accordingly, section 14.10(a) of the Texas Family Code applies. Section 14.10(a) provides that when the right to possession of a child is governed by a prior court order, the court in a habeas corpus proceeding shall compel the return of a child to the relator, in this case the Knightons, if and only if it finds that the relator is presently entitled to possession by virtue of the court order. Clearly, in the instant case, Whatley and not the Knightons was entitled to possession of the children by virtue of the Harris County court's writ of habeas corpus. Like Judge Bacon's February 6 and 24 orders, the order of April 19, 1982, makes no pretense of invoking the powers of section 14.10(c). There being a prior valid order governing possession of the children, a writ of habeas corpus cannot be used as a vehicle for redetermination of the right to possession of children. *Standley v. Stewart,* 539 S.W.2d 882 (Tex.1976).

We conditionally grant the writ of mandamus to compel Judge Bacon to vacate his temporary orders of February 6, 1982, and February 24, 1982, and to dissolve his writs of habeas corpus issued on February 6, 1982, and April 19, 1982. The writ of mandamus will issue only if Judge Bacon does not comply with this directive.

---------

Notes:

[1] Tex.Fam.Code Ann. § 11.11(a).

[2] Section 12.04 simply delineates the rights, privileges, duties and powers of a parent.

---------